Victor Manuel PENA–URRUTIA,
Petitioner,

v.

IMMIGRATION AND NATURALIZA-
TION SERVICE, Respondent.

No. 80–7039.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 5, 1980.

Decided Feb. 19, 1981.

David F. Aberson, Aberson & Korenberg,
Encino, Cal., for petitioner.

Carolyn M. Reynolds, Los Angeles, Cal.,
for respondent.

Before FERGUSON and NORRIS, Cir-
cuit Judges, and PANNER,* District Judge.

PANNER, District Judge:

## OVERVIEW

Pena-Urrutia (Pena) petitions for review
of a deportation decision. The thrust of his
challenge is that the Immigration & Natu-
ralization Service (INS) proceeded under
the wrong sections of the Immigration and
Naturalization Act (Act). We affirm.

## FACTS

On 2 July 1976, Pena-Urrutia executed
the following affidavit:

My true and correct name is Victor Pena.
I also use the name Victor Urrutia Pena.
I have never used any other names. I
was born in Santiago, Chile on November

---

* The Honorable Owen M. Panner, United States
District Judge for the District of Oregon, sitting
by designation.

27, 1942. I entered the United States as a permanent resident on February 26, 1974 at Blaine, Washington. My alien registration number is A34 746 107. I first met Laura Balcom two or three days before I married her. I was introduced to her by Carmen Moura or Pillar as she is known by her friends. I told Laura that I would have to leave the United States unless I married an American Citizen. I told her that it was for immigration papers and that she would live in her place and I would live in mine. I dont [sic] know why, but she agreed to marry. I did not pay her any money and to my knowledge Pillar did not pay her. We drove to Las Vegas, Nevada two or three days later and Laura and I were married. We drove back to Los Angeles the same day. I still stayed at my house on 5810 Gregory Way, Los Angeles and she lived down the street. About four or five days later we came to the Immigration office and she filed the papers for me. Since our marriage I have seen her three times or maybe four. We have never lived together nor have we had sexual relations. I married her because I wanted to stay in the country and at that time that was the only way I could. I am presently residing at 431 North Kingsley, Los Angeles, California and I am employed as a driver with the Southern California Rapid Transit District at 425 South Main Street, Los Angeles, California. I am telling the truth now and I would like to stay in this country.

On 12 January 1977, the INS charged that Pena was deportable because excludable at the time of entry [§ 241(a)(1) of the Act, 8 U.S.C. § 1251(a)(1)] as an alien who was not in possession of a valid unexpired immigrant visa [§ 212(a)(20) of the Act, 8 U.S.C. § 1182(a)(20)] and as an alien seeking to enter for the purpose of performing skilled or unskilled labor without the requisite labor certificate [§ 212(a)(14) of the Act, 8 U.S.C. § 1182(a)(14)]. The INS alleged:

1. You are not a citizen or national of the United States;

2. You are a native of Chile and a citizen of Chile;

3. You entered the United States at Blaine, Washington on or about February 26, 1974;

4. You were admitted to the United States upon presentation of an immediate relative immigrant visa issued to you by a United States Consular Official in Vancouver, B. C., Canada on February 25, 1974, pursuant to an application for such visa executed by you under oath before that official on February 25, 1974;

5. In support of that application, you submitted a marriage certificate reflecting that you participated as a principal in a marriage ceremony on May 27, 1973, in Las Vegas, Nevada, with Laura Lee Balcom, a United States citizen;

6. You have never resided in a true husband and wife relationship with Laura Lee Balcom;

7. At the time of your entry, you were coming to the United States for the purpose of performing skilled or unskilled labor;

8. At the time of your application for an immigrant visa and at the time of your admission to the United States, you did not possess nor present a labor certification issued by a representative of the Secretary of Labor.

At the deportation hearing, Pena's counsel admitted the eight factual allegations and stipulated with the INS that Pena's visa had never been revoked by the Department of State and that no revocation proceedings had been instituted by any consular officer. There was no objection to Pena's affidavit.

The Immigration Judge (IJ) ruled that Pena was deportable as charged, and rejected the argument that the INS had no authority to challenge a State Department Visa. The Board of Immigration Appeals (BIA) dismissed the appeal, reiterating that Pena was deportable as charged.

### DISCUSSION

Pena contests the authority of the INS to proceed against him under either of the two

sections of the Act charged. Although he frames this as a "jurisdictional" argument, the thrust of the challenge is the failure of INS to charge him with fraud.

The INS could have proceeded under subsection 212(a)(19) of the Act, 8 U.S.C. § 1182(a)(19), which provides that the following are ineligible for a visa and are excludable:

Any alien who seeks to procure, or has sought to procure, or has procured a visa or other documentation, or seeks to enter the United States, by fraud, or by willfully misrepresenting a material fact.

However, the INS elected to proceed under subsection (a)(14) (lack of labor certification) and subsection (a)(20) (invalid visa). The theory of INS was that the sham marriage invalidated the visa and that Pena therefore required labor certification, which he did not have. Pena first contends that while he may have been deportable on fraud grounds under subsection (a)(19), it was error for the INS to attempt to deport him for having an invalid visa under subsection (a)(20). He next contends that only the State Department has authority to revoke a validly issued visa; that no attempt was made by the State Department to revoke his visa and that the INS cannot retroactively attempt to revoke a visa that was "valid," that is, unchallenged by the State Department, while it existed.

The question therefore arises as to whether or not the INS can charge lack of a valid immigrant visa under subsections (a)(14) and (20) of the Act as a ground for exclusion, and hence deportability, instead of charging fraud in the procurement of the visa under subsection (19). Pena cites no authority directly addressing this issue.

*Castaneda-Gonzalez v. INS*, 564 F.2d 417 (D.C.Cir.1977), indicates some support for Pena's position:

... insofar as 212(a)(14) is concerned the Attorney General's inquiry is limited to whether the Secretary of Labor has determined that the substantive requirements of that subsection are satisfied. Once an alien shows that the Secretary of Labor has made such a determination in his favor, the statutorily delegated enforcement power of the Attorney General is exhausted. There is nothing in subsection 212(a)(14) itself that permits the Attorney General to ignore the Secretary's determination because he finds it factually defective and to decide for himself that under the correct facts a labor certificate should not have been granted. Subsection 212(a)(14) delegates that substantive determination only to the Secretary of Labor and simply directs the Attorney General to ensure that the Secretary has certified the alien. An alien so certified is not excludable under 212(a)(14).

*Id.* at 424–25. Pena essentially makes the same argument with respect to a visa issued by the State Department. A careful analysis of *Castaneda-Gonzalez* does not assist Pena under the facts involved here. The opinion continues:

Our holding that the substantive certification decision under subsection 212(a)(14) lies exclusively with the Secretary of Labor does not bar the Service from seeking to deport an alien on the basis of inaccuracies in the factual basis of a labor certificate. Subsection 212(a)(19) provides that an alien is excludable, and therefore deportable under 241(a)(1), if he "has procured a visa or other documentation ... by fraud, or by willfully misrepresenting a material fact." ...

*Id.* at 425. The Court then refused to allow the service to use subsection (a)(14) to avoid having to prove the willful misrepresentation required by subsection (a)(19). We are not faced with requiring such proof, however, because Pena has conceded the willful misrepresentation.

■ It is entirely appropriate for the INS to make inquiry into the marriage to the extent necessary to determine whether it was entered into for the purpose of evading the immigration laws. *Garcia-Jaramillo v. INS*, 604 F.2d 1236 (9th Cir. 1979). A marriage is a sham if the bride and groom did not intend to establish a life together at the time they were married. *Bark v. INS*, 511 F.2d 1200 (9th Cir. 1975). Fraud must

be established by clear, convincing, and unequivocal evidence. *Woodby v. INS*, 385 U.S. 276, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966). *See Chan v. INS*, 629 F.2d 579 (9th Cir. 1980); *Garcia-Jaramillo v. INS, supra*. While Pena was not specifically charged under subsection 212(a)(19), he has affirmatively alleged in his affidavit that his marriage was a "sham" and the fraud has thus been established.

## CONCLUSION

The allegations of the INS made it clear to Pena that he was charged with entering into a sham marriage to evade the immigration laws which invalidated the visa and vitiated the labor certificate exemption. He admitted those allegations, and so we are not required to determine whether the INS must charge fraud under subsection (a)(19) where the fraud is contested. The deportation decision of the BIA is affirmed.