UNITED STATES, Appellee,

v.

Dannie E. BOLDEN, Technical
Sergeant, U.S. Air Force,
Appellant.

No. 57,430.
ACM 25518.

U.S. Court of Military Appeals.

May 30, 1989.

For Appellant: *Captain Lynne H. Wet-
zell* (argued); *Colonel Leo L. Sergi* (on
brief); *Major Charles L. Willie.*

For Appellee: *Major Kathryn I. Taylor*
(argued); *Colonel Joe R. Lamport, Lieu-
tenant Colonel Robert E. Giovagnoni,
Lieutenant Colonel Morris A. Tanner* (on
brief).

*Opinion of the Court*

EVERETT, Chief Judge:

In February 1986, Technical Sergeant
Bolden was tried by a general court-martial
with officer members at Elmendorf Air
Force Base, Alaska. Contrary to his pleas,
he was found guilty of several drug of-
fenses;[1] larceny of more than $100.00; and
conspiracy to commit larceny of more than
$100.00, in violation of Articles 112a, 121,
and 81, Uniform Code of Military Justice,

---

1. These convictions were for one wrongful use
and one wrongful possession of cocaine, and for
six wrongful distributions of the drug.

10 USC §§ 912a, 921, and 881, respectively. The court-martial adjudged a sentence of dishonorable discharge, confinement for 7 years, total forfeitures, a fine of $5,000.00, and reduction to the lowest enlisted grade —which was approved by the convening authority. The Court of Military Review affirmed the findings and sentence. 23 MJ 852 (1987).

We granted review to consider whether the evidence was sufficient as a matter of law to support the convictions of larceny and conspiracy.[2]

I

According to the larceny charge, Bolden "did, at or near Elmendorf Air Force Base, Alaska, between about 14 May 1985 and 31 October 1985, steal United States currency, of a value of more than $100.00, the property of the United States Air Force." The allegations of conspiracy were that Bolden

did, at or near Elmendorf Air Force Base, Alaska, between about 1 April 1985 and 31 October 1985, conspire with Airman First Class Paul E. Bahre and Mary Alice Willoughby, to commit an offense under the Uniform Code of Military Justice, to wit: larceny of lawful currency and government benefits of a value of more than $100.00, the property of the United States Air Force, and in order to effect the object of the conspiracy, the said Technical Sergeant Dannie E. Bolden and Airman First Class Paul E. Bahre, did enter into an Apartment Rental Agreement which inaccurately reflected the dollar amount of the monthly rental payments and which said Apartment Rental Agreement was then presented to the Elmendorf Air Force Base Housing Referral Office, did orchestrate a sham marriage between Airman First Class Paul E. Bahre and Mary Alice Willoughby on 14 May 1985 and did provide rental property to Airman First Class Paul E. Bahre in order for Airman First Class Paul E. Bahre to receive with dependent rate BAQ, COLA and Rent Plus entitlements and in order for Mary Alice Willoughby to obtain military dependent benefits.

According to the Government's evidence, the conspiracy was motivated by Airman Bahre's desire to live away from Elmendorf Air Force Base and by his financial inability to do so unless he could draw a quarters allowance. Under Air Force Regulations, he could not qualify for this allowance if he were single.

Upon becoming aware of this problem, Bolden suggested that Bahre marry appellant's girl friend, Mary Willoughby. However, under the terms prescribed by Bolden, "Bahre was not to consummate the marriage [or] ... live with" Willoughby, "take her out socially, or hold her out" socially "as his wife." However, he would pay her support of $200 or $250 per month. Also, Bahre was to rent for $650 per month an apartment in which Bolden had a half interest.

Bahre and Willoughby obtained a marriage license "and went through a wedding ceremony before an Alaskan civil official" —with Bolden as "one of the official witnesses." Bahre never lived with Willoughby; "but he ... believed he was legally married to" her, and he arranged for her "to be issued a dependent's identification card and designated her beneficiary for his Service Life Insurance." Furthermore,

Bahre, using a rental agreement executed by himself and the appellant, which falsely stated the rent was $750.00 per month, applied for, and received, basic allowance for quarters at dependents' rates, increased cost of living allowance, and rent-plus payments. The cap on rent-plus was $700.00 per month, so Bahre was receiving $50.00 per month more than the actual rent ($650.00 per month) he was paying. Bahre received the aforementioned allowances and payments from the Air Force for five and a half months.

23 MJ at 853.

The military judge instructed the court members on the Government's theory that

---

2. WHETHER THE EVIDENCE IS INSUFFICIENT, AS A MATTER OF LAW, TO SUPPORT THE FINDINGS OF GUILTY ON CHARGE I [LARCENY], THE ADDITIONAL CHARGE [CONSPIRACY], AND THE SPECIFICATIONS THEREUNDER.

Bolden had aided and abetted Bahre in obtaining allowances to which he was not entitled and that this had been done pursuant to a conspiracy between Bahre, Bolden, and Willoughby. The judge also advised the members:

[A] sham marriage is void under the law of this country as against public policy and such a marriage can have no validity. Mutual consent is necessary to every contract and no matter what forms or ceremonies the parties may go through indicating the contrary, they do not contract if they do not in fact assent. Marriage is no exception to this rule. If the spouses agree to a marriage only for the sake of representing it as such to the outside world, they have never really agreed to be married at all. They must assent to enter into the relation as it is ordinarily understood and it is not ordinarily understood as merely a pretense or a cover to deceive others.

In this case you, as finders of fact, must determine from the evidence whether Airman First Class Bahre and Mary Willoughby were in fact married. In making this determination you must bear in mind the requirements of the Alaskan Statutes, the principles of law I have given you, and the facts presented in evidence in this case.

Since it is undisputed that the license and solemnization requirements were met, you should focus your inquiry on the mutual consent of the parties and whether or not they did in fact agree to and enter into a marriage contract. In reaching your decision regarding that issue, you must consider all evidence present in this trial which would bear on either side of that issue.

## II

### A

■ We granted review in this case primarily to consider whether a servicemember may be prosecuted for obtaining government benefits as a married person, if he participates in a marriage ceremony but never lives with the purported spouse or intends to do so. However, before considering this issue, we point out that, in any event, the Government's evidence was sufficient to sustain the convictions for larceny and conspiracy. According to this evidence, Bahre had intentionally overstated the rent he was paying; and so he had received each month an allowance greater than he was entitled to, even if he was validly married. The aggregate amount of these overpayments was substantially in excess of $100.00, as alleged in both the larceny and conspiracy specifications.

■ The finding that Bolden was guilty of the conspiracy charge made it clear that the court members accepted this government theory of his criminal liability for overstating his rent payments. Since the overstatement of the rent was part of the scheme into which Bahre and Bolden had entered in order for the former to obtain undeserved payments of quarters allowances, appellant was equally liable as a principal. *See* Art. 77, UCMJ, 10 USC § 877.

### B

Counsel have not referred us to any Alaska cases which discuss the effect of a "sham marriage" under the law of that state.[3] Perhaps under that law—which, according to accepted principles of conflict of laws, would govern the validity of the marriage—participation in a marriage ceremony is insufficient to create a valid marriage, if the parties never intended to live together as husband and wife. In that event, completion of the marriage ceremony clearly would not shield Bolden from conviction of larceny.

■ Even if the marriage was valid under Alaska law, we believe the govern-

---

**3.** We are not aware that any procedure currently is available whereby this Court might certify this legal issue to the Supreme Court of Alaska for its determination.

ment evidence was sufficient to sustain the findings of guilty. In the present context, state law does not control. Instead, we must inquire whether Congress intended for a servicemember to receive a quarters allowance as a married person if the marriage was a sham.

The situation is like that in *Lutwak v. United States*, 344 U.S. 604, 73 S.Ct. 481, 97 L.Ed. 593 (1953), where the Supreme Court upheld a conviction for "conspiracy 'to defraud the United States of and concerning its governmental function and rights of administering' the immigration laws and the Immigration and Naturalization Service, by obtaining the illegal entry into this country of three aliens as spouses of honorably discharged veterans." 344 U.S. at 605, 73 S.Ct. at 483. The defendants had procured the entry of the alien war brides by means of sham marriages, each of which had been undertaken "with the understanding that" the veteran "and his purported [alien] spouse would not live together as man and wife, but would sever the formal bonds of the ostensible marriage when the marriage had served its fraudulent purpose." 344 U.S. at 607, 73 S.Ct. at 484. The Supreme Court concluded that the validity of the marriage was not determinative.

> No one is being prosecuted for an offense against the marital relation. We consider the marriage ceremonies only as a part of the conspiracy to defraud the United States and to commit offenses against the United States. In the circumstances of this case, the ceremonies were only a step in the fraudulent scheme and actions taken by the parties to the conspiracy. By directing in the War Brides Act that "alien spouses" of citizen war veterans should be admitted into this country, Congress intended to make it possible for veterans who had married aliens to have their families join them in this country without the long delay involved in qualifying under the proper immigration quota. Congress did not intend to provide aliens with an easy means of circumventing the quota system by fake marriages in which neither

> of the parties ever intended to enter into the marital relationship; ... The common understanding of a marriage, which Congress must have had in mind when it made provision for "alien *spouses*" in the War Brides Act, is that the two parties have undertaken to establish a life together and assume certain duties and obligations.

344 U.S. at 611, 73 S.Ct. 486.

Similarly, we are convinced that when Congress authorized a basic allowance for quarters for a servicemember with "dependents," *see* 37 USC § 403, they intended that the "dependents" be persons who would usually be considered to fall in this category. If the claimed "dependent" is a "spouse," then, in our view, Congress did not intend that the term include a person who was linked to a servicemember by only a sham marriage. Although Congress did not intend to impose criminal liability on persons who had failed to satisfy technical legal requirements but were living together as husband and wife in a good faith belief that they were married, *cf.* 37 USC § 423, it also never intended to encourage or subsidize the sort of arrangement into which Bahre and Willoughby entered—with appellant's encouragement and at his direction.

The situation here is different from that in *United States v. Allen*, 27 MJ 234 (CMA 1988). There the Government never contended that the servicemember and the purported spouse had entered into a sham marriage. Instead, the issue was whether two married persons had been validly divorced. We concluded that Congress intended for the court-martial to be bound by a judicial determination of the validity of the divorce, which had been made by a court of the state having jurisdiction over the marital *res*. Under the circumstances in *Allen*, it would have been unfair to ignore state matrimonial law in assessing the criminal liability of the accused servicemember. On the other hand, there is nothing unfair in imposing criminal liability on a servicemember who seeks to obtain allowances from the Government by entering

into a fake marriage; and, in light of *Lutwak*, we are convinced that Congress meant to impose such liability.

### III

Since the Government's evidence was legally sufficient to sustain the findings of guilty and the instructions adequately informed the court members of the applicable legal principles, the granted issue is answered in the negative.

The decision of the United States Air Force Court of Military Review is affirmed.

Judge COX concurs.

Judge SULLIVAN participated in oral argument in this case. After a more particular examination of the record, including Appellate Exhibit VI, he disqualified himself from further participation in this case. *See generally* 28 USC § 455(b)(3).