**UNITED STATES**

v.

**Allen B. PHILLIPS, 297–70–9888, Cryptologic Technician (Interpretive) Third Class (E–4), U.S. Navy.**

**NMCM 97 01458.**

U.S. Navy–Marine Corps Court
of Criminal Appeals.

Sentence Adjudged 20 Dec. 1996.

Decided 20 Nov. 1998.

Maj Dale Anderson, USMC, Appellate Defense Counsel.

Bridget J. Wilson, Civilian Defense Counsel.

Capt Paul D. Kovac, USMC, Appellate Government Counsel.

OLIVER, Chief Judge:

A panel of officer and enlisted members serving as a general court-martial convicted the appellant, contrary to his pleas, of conspiracy, two specifications of making false official statements, and larceny, in violation of Articles 81, 107, and 121, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 907, and 921 (1994)[hereinafter UCMJ]. The members adjudged a bad-conduct discharge, confinement for 120 days, and reduction to the lowest enlisted pay grade. The convening authority approved the sentence as adjudged.

We have reviewed the record of trial, the appellant's five assignments of error,[1] and

---

1. I. THE EVIDENCE TO SUSTAIN A FINDING OF GUILTY TO THE CHARGES IS LEGALLY AND FACTUALLY INSUFFICIENT.

II. THE MILITARY JUDGE ERRED BY NOT TAKING JUDICIAL NOTICE OF DOMESTIC

the Government's response. We conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Art. 59(a), UCMJ, 10 U.S.C. § 859(a).

### Legal and Factual Sufficiency

The appellant first contends that the evidence at trial was legally and factually insufficient to support the court's findings of guilty. He argues that the record establishes that he and his wife had a valid marriage and that any inaccuracies in the paperwork he filed with Navy disbursing personnel were neither intentional nor legally significant. After careful review, we disagree.

█ Article 66(c), UCMJ, 10 U.S.C. § 866(c), requires this court to determine not only the legal sufficiency of the evidence, but also its factual sufficiency. The test for legal sufficiency is whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *United States v. Turner*, 25 M.J. 324 (C.M.A.1987). We are to "draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. McGinty*, 38 M.J. 131, 132 (C.M.A.1993)(quoting *United States v. Blocker*, 32 M.J. 281, 284 (C.M.A.1991)). Applying these criteria to the record, there is no question but that the evidence was legally sufficient.

█ The test for factual sufficiency is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, we ourselves are convinced of the accused's guilt beyond a reasonable doubt. *Turner*, 25 M.J. at 325; *see* Art. 66(c), UCMJ, 10 U.S.C.

§ 866(c). In resolving the question of factual sufficiency, we have carefully reviewed the record of trial and the briefs of the parties. After doing so, we are convinced beyond a reasonable doubt that the appellant committed each of the elements of the offenses of which he was convicted.

█ The members found the appellant guilty of conspiring with Ms. Lori Lussier to commit the offense of larceny and larceny of military funds. After reviewing the evidence in support of these offenses, the members obviously found, as do we, that the appellant entered into a "sham marriage" for the purpose of receiving financial benefits the Congress intended to support legitimate spouses and other valid dependents of military personnel.

The appellant's course of conduct in this matter proves his larcenous intent. He married Ms. Lussier while continuing to maintain an ongoing homosexual relationship. He and his male partner lived together and held themselves out, at least with respect to a small group of close friends, as a homosexual couple, both before and after the "marriage." He never lived with his "wife" until after he learned that he was the subject of an investigation. He never provided her with any significant financial support. His obvious motivation in getting a marriage certificate from the State of Hawaii was to obtain permission and financial support to move out of the barracks into an off-base residence he shared with his homosexual partner. At the same time, Ms. Lussier was engaged in a homosexual relationship with her roommate, with whom she continued to live after her "marriage" to the appellant. While the appellant testified and produced evidence that he had entered into a valid marriage with Ms. Lussier, and that there were good explanations for why they lived apart and why he

LAW AND DECISION. M.R.E. 201A, MCM (1995 ed.).

III. THE MILITARY JUDGE ABUSED HIS DISCRETION BY IMPROPERLY INSTRUCTING ON THE DEFINITION OF A VALID MARRIAGE.

IV. THE MILITARY JUDGE ABUSED HIS DISCRETION BY IMPROPERLY ADMITTING IRRELEVANT EVIDENCE OF THE APPELLANT'S PRIOR HOMOSEXUAL CONDUCT.

V. WHETHER PETTY OFFICER PHILLIP'S MARRIAGE WAS MORE LIKELY A SHAM BECAUSE OF HIS ALLEGED SEXUAL ORIENTATION AS HOMOSEXUAL IS A QUESTION OF RELEVANCY CONDITIONED ON FACT, WHICH THE TRIAL JUDGE FAILED TO RULE UPON OR ABOUT WHICH HE FAILED TO PROVIDE INSTRUCTION TO THE MEMBERS OF THE COURT.

used the additional housing allowance entirely for his own purposes, the members of the general court-martial concluded that the marriage was indeed a sham. As a result of our review of the record, we are convinced that the appellant conspired to and later committed larceny by obtaining housing allowances under false pretenses.

■ The members also found the appellant guilty of two specifications of signing false official records, a Variable Housing Allowance certificate and his Record of Emergency Data. Prosecution Exhibits 12, 14. The appellant argues that while the address listed for his wife on the documents was technically false, each of his signatures was an "honest mistake" and, in any case, these errors made no difference with respect to his entitlement to pay and allowances.

We have compared the elements of these two offenses with the evidence presented at trial, including the appellant's testimony on the merits. The far more credible resolution of the conflicting evidence is that the appellant wished to conceal the fact that his wife was not living at the same address as he was. Thus, he signed these documents containing false information with the intent to deceive. We are convinced, as were the members, that the evidence supports each of the elements of these two specifications, as well as the conspiracy and larceny offenses, beyond a reasonable doubt.

### Failure to Take Judicial Notice

■ In his second assignment of error, the appellant argues that the military judge erred by denying his request at trial to take judicial notice of a 1979 Comptroller General opinion and certain Federal statutes concerning the role of the General Accounting Office and Comptroller General. We disagree.

After the Government had presented its case on the merits, the appellant moved for a finding of not guilty. In support of his argument, he requested that the military judge take judicial notice of several statutes and a decision of the Comptroller General. Record at 230–31. The appellant wished to rely on the Comptroller General's opinion that the reasons for entering into marriage are irrelevant as long as the marriage is valid under state law. Appellate Exhibit XVI; Record at 239–40. The military judge ruled that he would take judicial notice and advise the members of the Hawaii statute governing the elements of a valid marriage. However, he denied the appellant's request that he take judicial notice of the Federal statutes and Comptroller General's opinion. Id. at 243.

Military Rule of Evidence 201A, MANUAL FOR COURTS-MARTIAL, UNITED STATES (1995 ed.)[hereinafter MIL.R.EVID.] permits a military judge to "take judicial notice of domestic law." We have read with some interest the opposing briefs arguing that the Comptroller General's opinion either does or does not constitute "domestic law." While we find the Government's argument to be more persuasive, we do not rest our holding on that conclusion. Instead, we conclude that the military judge, after reading the appellant's trial brief, reviewing the materials, and hearing argument, made a well reasoned and conscientious call to keep this evidence from coming before the members as part of his obligation to exercise reasonable control over the proceedings. See RULE FOR COURTS-MARTIAL 801(a)(3), MANUAL FOR COURTS-MARTIAL, UNITED STATES (1995 ed.)[hereinafter R.C.M.]. He concluded that it would be a "waste of the court's time" to take judicial notice of that opinion. Record at 243. He also found that introducing that information "would be misleading to the members and would just cause more confusion than any clarity it would add to this case." Id. His ruling in this regard was well supported in both law and fact. See MIL.R.EVID. 401–403. There was certainly no abuse of discretion. United States v. Casey, 45 M.J. 623, 627 (N.M.Ct.Crim.App.1996).

■ Moreover, even assuming arguendo that the military judge should have permitted the members to consider the Comptroller General's opinion, we conclude that the ruling did not prejudice the appellant to any significant degree. He was able to develop evidence to support his theory that, because he had a valid marriage license, he was entitled to BAQ and VHA benefits until such time as the appropriate authorities determined otherwise.

The Government's expert on disbursing procedures testified that the motivation someone might have to get married did not normally affect his entitlement to BAQ and VHA payments. The key factor they considered was whether the applicant possessed a valid marriage certificate. Record at 193; *see* Defense Exhibit A. He testified that the DOD Financial Management Regulations provide a procedure for determining the validity of a doubtful marriage. Record at 197–98; *see* Prosecution Exhibit 8. Finally, he was unable to testify that any disbursing official had sought or obtained such a determination. Record at 199. The appellant's counsel used this testimony effectively in his argument to attempt to refute or at least raise a reasonable doubt as to the criminality of the appellant's conduct.

█ Finally, we agree with the military judge that the appellant was not entitled to introduce, before the members, a legal opinion that he had committed no crime. If that was, in fact, the state of the law, the military judge should have dismissed the case on the motion for a finding of not guilty. However, the military judge properly refused to do so, reasoning as follows: "I think it would be ludicrous to interpret these comptroller general's decisions to indicate that every servicemember in the United States Navy could go ahead and get married just to collect BAQ." Record at 243. The law applicable at courts-martial is that Congress did not intend for a servicemember to receive an allowance for quarters as a married person if the marriage itself was a "sham." *United States v. Bolden*, 28 M.J. 127, 129–30 (C.M.A.1989); *cf. Lutwak v. United States*, 344 U.S. 604, 611, 73 S.Ct. 481, 97 L.Ed. 593 (1953)(holding that the "common understanding of a marriage, which Congress must have had in mind [in enacting the statute in question], is that the two parties have undertaken to establish a life together and assume certain duties and obligations."). In *Bolden*, our superior court determined that state law, and the possession of an apparently valid marriage license, did not control the issue of whether a serviceman could be convicted of larceny for receiving housing allowances based on a sham marriage. *Bolden*, 28 M.J. at 129–30; *see United States v. Minaya*, 30 M.J. 1179, 1182

(A.F.C.M.R.1990). The military judge committed no error.

### Erroneous Instruction on a Valid Marriage

In his third assignment of error, the appellant contends that the military judge abused his discretion when he gave the members an instruction the Government had proposed on what constitutes a valid marriage for the purpose of receiving housing allowances. We find no error.

█ A military judge's instructions are reviewed for an abuse of discretion. *United States v. Damatta–Olivera*, 37 M.J. 474, 478 (C.M.A.1993). The appellant made a timely objection to the Government's proposed instruction. Record at 343. Included in the draft instruction was language largely extracted from a 1989 decision of the Court of Military Appeals, *United States v. Bolden*, 28 M.J. 127 (C.M.A.1989).

We find more than adequate support for the particular instruction the military judge gave concerning wrongfully obtaining benefits based on a "sham marriage" in the decision of our higher Court in *Bolden*. Compare Record at 378 *with Bolden*, 28 M.J. at 129–30. The appellant's efforts to distinguish *Bolden* on the facts and argue that the language in that case constitutes mere *obiter dictum* are unpersuasive. When faced with a similar issue in 1990, our Air Force brethren relied on *Bolden* as "outcome-determinative." *Minaya*, 30 M.J. at 1182. Despite his best efforts, the appellant also failed to draw a legally significant semantic distinction between the military judge's use of the term "determinative" in his instructions rather than "controlling" as the court had used in *Bolden*. We are confident that the military judge provided the members with appropriate guidance as to the applicable law governing their deliberations.

### Evidence of the Appellant's Prior Homosexual Conduct

In his fourth assignment of error, the appellant contends that the military judge abused his discretion by admitting evidence of the appellant's prior homosexual conduct.

As a result, he argues that this court should set aside the findings and the sentence. We disagree.

The appellant took great pains to prevent the introduction of evidence that he had been engaged in a long-standing homosexual relationship with another servicemember, and engaged in homosexual conduct with at least one other servicemember, both before and after the date of his "marriage" to Ms. Lussier. He made a motion in limine to prevent this evidence from coming before the court. Appellate Exhibit II. However, after reviewing the positions of each side, the military judge announced that he would wait until later in the trial to rule on the motion. Record at 19.

Following the defense case-in-chief and after hearing offers of proof and argument from each side, the military judge ruled that the Government could call two of the three witnesses they wanted to provide limited testimony as to their homosexual relationship with the appellant. *Id.* at 317. He concluded that the testimony would tend to rebut assertions contained in the defense's case-in-chief that the appellant and his wife held themselves out as a married couple and had a traditional marital relationship. *Id.* at 318.

▮▮ Although evidence of other crimes or wrongful activity is not admissible to prove the criminal or anti-social character of any person, such evidence "may ... be admissible for other purposes, such as proof of motive [or] intent...." MIL.R.EVID. 404(b). Our superior court has articulated a three-part test to determine whether uncharged misconduct is admissible as evidence at a court-martial. First, the evidence must reasonably tend to prove that the accused committed the uncharged act. Second, the evidence must make some fact of consequence more or less probable. Finally, the danger of unfair prejudice must not substantially outweigh the probative value of the evidence. *United States v. Robles–Ramos*, 47 M.J. 474, 476 (1998).

▮▮ The appellant admits that the testimony meets the first prong of this test. However, he argues that it falls short on the second and third prongs.

Turning to the second prong, the appellant argues that there is no logical relevance to the testimony that the appellant held himself out and lived as part of a homosexual couple, and engaged in other homosexual activities, before and following his marriage, on the issue of whether he entered into the marriage purely for the purpose of obtaining preferential housing arrangements and financial benefits from the Government. While we have tried to follow the logic of this argument, we are unpersuaded. Of course, the members were not required to believe this evidence or adopt the Government's theory concerning motive or intent. However, we conclude, as did the military judge, that this testimony clearly was logically relevant to support the Government's theory of the case. *See United States v. Shaner*, 46 M.J. 849, 851 (N.M.Ct.Crim.App.1997).

With respect to the third prong, there is certainly a distinct possibility that some members might find the testimony concerning the appellant's homosexual relationship to be "incendiary." Appellant's Brief and Assignments of Error at 20. However, we do not agree that the relevancy of this evidence "was weak at best." *Id.* The relevancy with respect to motive and intent was obvious and compelling and therefore, the relevance was not "substantially out-weighed by the danger of unfair prejudice." MIL. R.EVID. 403; *Robles–Ramos*, 47 M.J. at 476. Moreover, the military judge took appropriate steps to ensure that the members did not convict the appellant because they considered him to be a bad or immoral person based on his alternative life-style. First, he enabled the appellant to pose questions during the *voir dire* process to seek to identify and remove from the panel any member who would be predisposed to convict or excessively punish someone merely on the basis of their sexual preference. Record at 74–117. *See* Appellate Exhibit IX (proposed *voir dire* questions). Second, he gave an appropriate limiting instruction to the members to ensure that the members considered the evidence only for the purpose for which it was admitted. Record at 384.

After applying this three-part test, we conclude that the military judge did not abuse

his discretion in admitting the challenged evidence.

### Failure to Rule on a Preliminary Question of Fact

In a final assignment of error, the appellant contends, for the first time on appeal, that the military judge erred because the relevance of the appellant's sexual orientation "is a question of relevancy conditioned on fact" on which he failed to rule or about which he failed to instruct the members. We disagree that there was any error.

Military Rule of Evidence 104(b) provides as follows: "*Relevancy conditioned on fact.* When the relevancy of evidence depends upon the fulfillment of a condition of fact, the military judge shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition." In *United States v. White,* 23 M.J. 84, 86 (C.M.A.1986), our superior court observed that evidence of "battered child syndrome" was admissible under MIL. R.EVID. 404(b) only if the Government proved that the accused had committed extrinsic offenses against a child. Since there was such proof, the court held that the syndrome evidence was admissible. *White,* 23 M.J. at 87–88.

The appellant contends that there is nothing logically inconsistent with someone engaging in an ongoing homosexual living arrangement and a valid marriage to another person. He suggests, for example, the possibility that the appellant might be bisexual as one "obvious" explanation that would fully reconcile his marriage and concurrent homosexual relationships. Brief and Assignments of Error at 22. Thus, he argues that the military judge should have insisted that the Government establish a factual predicate before he permitted the court to consider this evidence. Because of this failure of the military judge to ensure that there was a valid factual basis, he also considers objectionable the trial counsel's argument that his sexual orientation created a greater likelihood that his marriage would be a sham.

Since the appellant did not raise this theory of relevancy or the alleged error by the military judge or trial counsel at trial, we review the alleged error under a "plain error" analysis. MIL.R.EVID. 103(d); R.C.M. 919(c); *see United States v. Fisher,* 21 M.J. 327, 328 (C.M.A.1986). Although the appellant filed a motion in limine and objected to the evidence on the basis that the evidence was not relevant to any issue before the court-martial, Appellate Exhibit II, he never attempted to litigate or even raise his current theory, that the admissibility of this evidence raised a question of relevance conditioned on a factual determination. The trial counsel articulated her theory of relevance before the military judge ruled on its admissibility. The military judge accepted that theory as one factually supported by the evidence and reasonably within the competence of the members to understand. The appellant never objected to the trial counsel's argument. The military judge provided appropriate instructions to the members. The appellant had the opportunity to introduce evidence and make argument to support his position that his was a valid, albeit perhaps untraditional, marriage. We find no abuse of discretion, much less plain error.

### Conclusion

Accordingly, we affirm the findings and the sentence, as approved on review below.

Judge ANDERSON and Judge ROLPH concur.