# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
CAMPANELLA, SALUSSOLIA, and FLEMING
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Specialist JEREMIAH J. WINDHAM**
**United States Army, Appellant**

ARMY 20160340

Headquarters, 1st Cavalry Division (Rear)(Provisional)
Clinton Johnson, Military Judge
Colonel Oren H. McKnelly, Staff Judge Advocate

For Appellant: Lieutenant Colonel Christopher D. Carrier, JA; Captain Joshua B. Fix, JA; Captain Ryan T. Yoder, JA (on brief); Lieutenant Colonel Tiffany M. Chapman, JA; Captain Bryan A. Osterhage, JA; Captain Joshua B. Fix, JA (on reply brief).

For Appellee: Colonel Tania M. Martin, JA; Lieutenant Colonel Eric K. Stafford, JA; Major Michael E. Korte, JA; Captain Marc B. Sawyer, JA (on brief).

17 November 2017

---------------------------------
OPINION OF THE COURT
---------------------------------

FLEMING, Judge:

We hold there is not a substantial basis in law or fact to question appellant's pleas to conspiracy to commit larceny and larceny because the reasoning behind *United States v. Bolden*, 28 M.J. 127 (C.M.A. 1989), has not been changed in light of *United States v. Windsor*, 133 S. Ct. 2675 (2013).

A military judge sitting as a special court-martial convicted appellant, pursuant to his pleas, of one specification of conspiracy to commit larceny, one specification of larceny, and one specification of assault consummated by a battery in violation of Articles 81, 121, and 128 of the Uniform Code of Military Justice, 10 U.S.C. §§ 881, 921, and 928 (2012) [hereinafter UCMJ]. The convening authority approved the adjudged sentence of a bad-conduct discharge, confinement for four months, and reduction to the grade of E1. This case is before us for review pursuant to Article 66, UCMJ. Appellant asserts one assigned error that merits discussion, but no relief.

## BACKGROUND

After researching fraudulent marriage and military benefits on his computer, appellant and Ms. TG married on 13 June 2013 at the Killeen, Texas courthouse.[1] Appellant presented his marriage certificate to Army officials and started receiving his Basic Allowance for Housing (BAH) entitlement at the with-dependent rate. The parties commenced living together in a rental house, after appellant moved out of the barracks and Ms. TG moved out of her trailer, but they maintained separate bedrooms and engaged in romantic relationships with other people. Appellant admitted to the military judge he married Ms. TG "for the sole purpose of obtaining money from the United States."

Appellant described his marriage to Ms. TG as a "fake marriage," a "contract marriage," and stated "we did not get married with the intent of being in a relationship." The military judge accepted appellant's plea to conspiracy to commit larceny of BAH and larceny of BAH. Relying on the Supreme Court's decision in *Windsor*, appellant now asserts there is a substantial basis in law and fact to question his plea to these two offenses because he was legally married under Texas law and the federal government must recognize the validity of his state marriage certificate with respect to BAH entitlements.[2]

## LAW AND DISCUSSION

A guilty plea will be set aside if there is a substantial basis in law or fact to question the plea. *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008) (citing *U.S. v. Prater*, 32 M.J. 433, 436 (C.M.A. 1991)). A military judge's acceptance of a guilty plea is reviewed for an abuse of discretion. *United States v. Eberle*, 44 M.J. 374, 375 (C.A.A.F. 1996).

Section 403 of Title 37, United States Code authorizes some service members to receive BAH entitlements at the with-dependent rate. A "dependent" includes "[t]he spouse of a member." 37 U.S.C § 401(a)(1). Our superior court has long recognized servicemembers are not entitled to BAH at the with-dependent rate when they engage in a "sham marriage." *Bolden*, 28 M.J. at 130. The Court of Appeals for the Armed Forces (CAAF) stated "[i]f the claimed 'dependent' is a 'spouse,'

---

[1] Appellant researched whether he could enter into a "contract marriage" to "get benefits without actually being involved with a real marriage."

[2] Appellant was still married to Ms. TG at the time of his trial. For the first time on appeal, appellant asserts Tex. Ann. Code § 1.101 dictates that his Texas marriage was valid. While the validity of appellant's Texas marriage was not discussed at trial, this court notes that Tex. Ann. Code § 1.101 discusses the marital rules for those entering a marriage relationship in "good faith."

then, in our view, Congress did not intend that the term include a person who was linked to a servicemember by only a sham marriage." *Id.* (citing *Lutwak v. United States*, 344 U.S. 604 (1953)), for the proposition that the validity of a marriage is not determinative as to the receipt of immigration status if there is a "sham marriage"); s*ee also United States v. Phillips*, 52 M.J. 268, 272 (C.A.A.F. 2000) (holding the validity of a marriage under state law is not determinative when a "sham marriage" exists). "'Even if the marriage was valid under [state] law,' our task would be to 'inquire whether Congress intended for a servicemember to receive quarters allowance as a married person if the marriage was a sham.'" *United States v. Hall,* 74 M.J. 525, 529 (A.F. Ct. Crim. App. 2014) (quoting *Bolden*, 28 M.J. at 129-30 (affirming plea to BAH larceny where a marriage was a sham at inception and making appellant's decision to later "make a go" of her marriage immaterial)).

Appellant invites this court to overturn the CAAF's reasoning in *Bolden*, in light of *Windsor*. Appellant asserts that *Windsor* invalidates a prior Supreme Court decision, *Lutwak*, which was the precedent behind the *Bolden* court's decision. This court, however, declines appellant's invitation to invalidate *Bolden's* reasoning because it would require an overly broad view and misapplication of *Windsor*.

Recently, the Supreme Court held the federal government's refusal to recognize the validity of a same-sex marriage recognized by the state of New York deprived a protected class of their equal protection rights under the Fifth Amendment. *Windsor*, 133 S. Ct. at 2696.[3] The Supreme Court held the Defense of Marriage Act (DOMA), which was "applicable to over 1,000 federal statutes and [a] whole realm of federal regulations," was unconstitutional. *Id.* at 2690. While *Windsor* nullified DOMA and its extensive applicability to several federal laws and regulations, the Supreme Court continued to recognize the "constitutionality of limited federal laws that regulate the meaning of marriage in order to further federal policy." *Id.* For example, even if a marriage was valid under state law, the federal government was not required to recognize, for immigration purposes, a marriage entered into for the sole purpose of procuring a noncitizen's admission into the United States. *Id.* This caveat recognizing the constitutionality of some limited federal laws to deny federal benefits to the participants of a "sham marriage" reaffirms the Supreme Court's reasoning in *Lutwak,* which dealt directly with a limited immigration law and the receipt of federal benefits. With *Lutwak's* legal underpinnings reaffirmed by *Windsor*, this court finds no authority to deviate from our superior court's precedent in *Bolden*.

---

[3] In *Windsor*, the state of New York recognized the same-sex marriage in question. 133 S. Ct. at 2683. The Supreme Court noted several other states recognized the validity of same-sex marriages. *Id.* at 2689. *Windsor* did not address if constitutional protections existed for "sham marriages."

This court does not read *Windsor* to stand for the proposition that the federal government is completely powerless to administer its own programs and policies when presented with a "sham marriage." Further, this court does not interpret *Windsor* to grant protected class status and Fifth Amendment equal protection rights to a class of people, such as appellant, who admittedly enter into a "fake" or "contract" marriage with the sole intent to defraud the federal government.

Finding the *Bolden* decision and its progeny unaffected by *Windsor*, the issue at bar is not whether appellant's Texas marriage certificate is or is not valid and should be recognized by the federal government, but rather whether appellant's sole purpose in entering the marriage was to obtain governmental funds to which he was not otherwise entitled. The legitimacy of appellant's Texas marriage is non-determinative and immaterial to this court's review of appellant's case. *Bolden*, 28 M.J. at 130; *Phillips*, 52 M.J. at 272 (citation omitted); *But see United States v. Anderson*, 2016 CCA LEXIS 529, *5 (Army Ct. Crim. App. 31 Aug. 2016) (finding a substantial basis in law and fact to question appellant's plea when the record did not establish appellant's singular focus of the marriage was to obtain BAH).

A review of appellant's discussion with the military judge makes it abundantly clear his "sole purpose" in marrying Ms. TG was to obtain a BAH entitlement at the with-dependent rate. While appellant never said the actual word "sham," he readily admitted to the military judge that his marriage was "fake," a "contract," and not "with the intent of being in a relationship." All of appellant's admissions equate to this court finding appellant's marriage was a "sham" and for the sole purpose and singular focus of defrauding the federal government. Considering the entire record, to include the stipulation of fact and appellant's providence inquiry responses, there is not a substantial basis in law or fact to question appellant's pleas to conspiracy to commit larceny and larceny.

## CONCLUSION

The findings of guilty and sentence are AFFIRMED.

Senior Judge CAMPANELLA and Judge SALUSSOLIA concur.

FOR THE COURT:

JOHN P. TAITT
Chief Deputy Clerk of Court

4