UNITED STATES, Appellee,

v.

Allen B. PHILLIPS, Cryptologic
Technician (Interpretive) Third
Class, U.S. Navy, Appellant.

No. 99–0313.
Crim.App. No. 97–1458.

U.S. Court of Appeals for
the Armed Forces.

Argued Oct. 19, 1999.

Decided March 6, 2000.

GIERKE, J., delivered the opinion of the Court, in which CRAWFORD, C.J., and SULLIVAN, J., joined. EFFRON, J., filed a dissenting opinion, in which COX, S.J., joined.

For Appellant: *Major Dale E. Anderson,* USMC (argued); *Bridget J. Wilson.*

For Appellee: *Lieutenant Janice K. O'Grady,* JAGC, USNR (argued); *Colonel Kevin M. Sandkuhler,* USMC, and *Commander Eugene E. Irvin,* JAGC, USN, (on brief); *Major Troy D. Taylor,* USMC.

Judge GIERKE delivered the opinion of the Court.

A general court-martial composed of officer and enlisted members convicted appellant, contrary to his pleas, of conspiracy to commit larceny, falsely signing official records (2 specifications), and larceny (2 specifications), in violation of Articles 81, 107, and 121, Uniform Code of Military Justice, 10 USC §§ 881, 907, and 921, respectively. The adjudged and approved sentence provides for a bad-conduct discharge, confinement for 120 days, and reduction to the lowest enlisted grade. The Court of Criminal Appeals affirmed the findings and sentence. 49 MJ 521.

This Court granted review of the following issue:

> WHETHER THE MILITARY JUDGE ERRED BY ADMITTING EVIDENCE OF APPELLANT'S HOMOSEXUAL CONDUCT TO PROVE APPELLANT DID NOT HAVE A VALID MARRIAGE ENTITLING HIM TO BASIC ALLOWANCE FOR QUARTERS (BAQ) AND VARIABLE HOUSING ALLOWANCE (VHA).

For the reasons set out below, we hold that the military judge did not abuse his discretion.

*Factual Background*

The charges alleged that appellant conspired with his wife, Lori Lussier, to fraudulently obtain BAQ and VHA, signed official documents falsely representing that his wife resided with him, and committed larceny by fraudulently obtaining BAQ and VHA. The prosecution theory was that appellant entered into a sham marriage with Lori Lussier in order to be allowed to move from the barracks into an off-base apartment, live with his homosexual partner, and obtain BAQ and VHA to pay for the apartment.

Before appellant entered his pleas, the defense made a motion *in limine* to exclude any evidence of appellant's sexual orientation. The defense argued that the evidence was not relevant and that its admission would be highly prejudicial and cause confusion of the issues. The defense asserted that the court-martial was about stealing, not sexual preference. The prosecution argued that appellant's involvement in a homosexual relationship that began before the purported marriage and continued afterward tended to show that the marriage was a sham. The Government also argued that, because appellant could not continue his homosexual relationship in the barracks without risking discovery and could not afford to live off base, the evidence was relevant to show his motive for conspiring with Lori Lussier and fraudulently obtaining BAQ and VHA. The military judge declined to rule, stating that he would address the issue as the evidence developed.

Anticipating the possibility that evidence of appellant's sexual orientation would be admitted, the defense conducted extensive individual *voir dire* of the members. Two of the three officers who eventually heard appellant's case said that they considered homosexuality morally wrong. One officer said that he would consider appellant's sexual orientation on sentencing "[i]f that was allowed by the judge," but "[i]f it's not something that we can consider, I won't consider it." One officer thought that homosexuality was detrimental to good order and discipline and stated that she would be biased toward a discharge if appellant were convicted, but that she would follow the instructions of the military judge. One officer and all three enlisted members said that they had no negative feelings about homosexuality. However, one enlisted member said he would be uncomfortable sharing a berthing area with a

homosexual. None of the members indicated that they would be less inclined to believe a homosexual. One officer and one enlisted member specifically said that homosexuality would not affect their assessment of credibility.

Much of the prosecution case-in-chief was uncontested. The prosecution presented evidence that enlisted personnel in appellant's unit were not allowed to move off base and receive BAQ and VHA unless the barracks were 95% occupied. On September 26, 1994, appellant requested permission to move off base and was placed at the bottom of the waiting list.

On May 29, 1995, Lori Lussier and Allison LeGros rented an apartment in Honolulu, Hawaii, for a period ending on September 30, 1995. On July 12, 1995, appellant and Army Specialist (SPC) Jeffery Runey executed a 1-year lease on an apartment in Makakilo, Hawaii. On August 3, 1995, appellant and Lori Lussier were married. On August 23, 1995, appellant executed a "VHA Certificate," in which he stated that his "dependents" were residing in the apartment in Makakilo, and that he was sharing the apartment with another servicemember entitled to BAQ. On September 18, 1995, appellant requested that he receive BAQ and VHA. He began receiving BAQ and VHA in November 1995, retroactive to August 3, 1995.

On October 26, 1995, appellant requested command sponsorship for his wife. The request was approved on November 1, 1995. On November 3, 1995, appellant signed a NAVPERS 1070/602R, "Record of Emergency Data/Dependency Application," stating that his spouse, Lori Lussier, resided with him.

On February 15, 1996, appellant re-executed his lease, removing SPC Runey and listing himself as the sole tenant. On March 5, 1996, he executed another "VHA Certificate," deleting the reference to "other servicemembers entitled to basic allowance for quarters" and again showing that his "dependents" resided with him.

The central issue in the case was whether appellant's marriage was a sham. The prosecution presented testimony from Cryptologic Technician (Interpretive) Second Class (CTI2) Patrick Egge, appellant's assistant supervisor and friend, who testified that about a month before the marriage, appellant told him that he was getting married "to move off base." CTI2 Melissa Lavello, appellant's former supervisor, testified that, after a conversation initiated by appellant, she concluded that appellant's marriage was "a business deal." Her understanding was as follows:

> [T]hat he didn't live with her, that he never lived with her, and that he moved off base—or he got married to live off base, that it was a business deal. She didn't live with him. He didn't live with her. He wasn't giving her housing money. They had their own lives. But she got the dependent ID card which meant the privileges that go with that and there was nothing more to it than that.

During the defense case-in-chief, appellant testified that he met Lori Lussier in February 1995. They started dating approximately 3 weeks later, started talking about marriage in late March or early April 1995, and were married on August 3, 1995.

Appellant testified that his wife was the director of a day care center in Honolulu, worked long hours, and did not want to move from her apartment because of the long drive between his duty station and Honolulu. He testified that his wife arranged a month-to-month lease so that she could move if he could break his lease. He testified that he took SPC Runey off the lease because they were "not really getting along as roommates."

Appellant testified that he and his wife spent time together when his schedule permitted. He worked rotating shifts so that his "weekends" sometimes were on days other than Saturday and Sunday.

Appellant testified that he did not send any money to his wife. He testified that "[s]he didn't ask [him] for anything," but he "supported her when she needed [his] support."

Appellant testified that he did not intend to defraud the Government. He testified

that a person at PSD (Personnel Services Division) suggested that he show his wife's address as the same as his so that he would not have to change it after she joined him. He had never filled out VHA forms before, and he trusted the persons in PSD.

The defense renewed its motion in limine before the prosecution case in rebuttal, again asserting that the evidence of appellant's sexual orientation was not relevant and that its admission violated Mil.R.Evid. 403 and 404(b), Manual for Courts–Martial, United States (1995 ed.).[1] The military judge ruled that he would allow the evidence to rebut the defense assertions "that the accused and his wife held themselves out as a married couple, were married, and engaged in a traditional relationship." He also ruled that he would consider the evidence under Mil.R.Evid. 404(b) to show motive and intent and to rebut the defense assertion that there was a valid marriage. Although the defense specifically argued that admission of the evidence violated Mil.R.Evid. 403, the military judge did not articulate his Rule 403 analysis on the record.

After the military judge denied the defense motion *in limine*, SPC Runey testified that he and appellant held themselves out as a homosexual couple to "[a] close group of friends," both before and after appellant's marriage. He testified that appellant and he had an understanding before appellant's marriage that their homosexual relationship would continue after the marriage. Runey testified that appellant's wife was aware of their relationship. Runey also testified that his own wife, Allison LeGros, and appellant's wife held themselves out as a homosexual couple before appellant's marriage. ` Finally, Runey testified that he and appellant leased the apartment to continue their homosexual relationship. Runey did not testify about any specific homosexual acts.

Airman Harris testified that he had a homosexual relationship with appellant during the summer or fall of 1995. He testified

further that appellant and Runey were a "homosexual couple" at the time.

The military judge instructed the members to consider the evidence of homosexual conduct "only for the limited purpose of rebutting other evidence regarding the character of the accused's marriage." He instructed them that they "may not consider this evidence of these acts for the purposes of assessing whether or not the accused is a good or bad person because of evidence of his alleged involvement in homosexual conduct nor as propensity evidence to commit criminal acts."

*Discussion*

Appellant asserts that his homosexual conduct does not make the validity of his marriage any more or less probable. He argues that homosexual relationships have no legal status and that acts of marital infidelity before or during marriage do not invalidate the marriage. Finally, he argues that, even if the evidence has any probative value, it is substantially outweighed by the danger of unfair prejudice.

The Government argues that the evidence was admissible to show appellant's motive and intent to obtain allowances to which he would not otherwise be entitled. The Government further argues that the evidence was proper rebuttal to appellant's testimony that his marriage was not fraudulent.

■ Mil.R.Evid. 404(b) prohibits admission of "[e]vidence of other crimes, wrongs, or acts ... to prove the character of a person in order to show action in conformity therewith." However, the rule permits such evidence for some purposes, such as proving motive or intent.

■ This Court has applied a three-part test to determine the admissibility of evidence of "other crimes, wrongs, or acts": (1) the evidence must reasonably support a finding by the court members that appellant committed prior crimes, wrongs, or acts; (2) the evidence must make a fact of consequence more or less probable; and (3) the

---

1. All Manual provisions are cited to the version in effect at the time of trial. The 1998 version is unchanged, unless otherwise indicated.

probative value must not be substantially outweighed by the danger of unfair prejudice. *United States v. Reynolds,* 29 MJ 105, 109 (CMA 1989). We review a military judge's admission of evidence under Mil. R.Evid. 404(b) for abuse of discretion. *United States v. Robles–Ramos,* 47 MJ 474, 476 (1998). The military judge's exercise of discretion is reviewed on the basis of the facts before him or her at the time of the ruling. *United States v. Grant,* 49 MJ 295, 297 (1998).

■ The third prong of the *Reynolds* test requires the military judge to apply Mil. R.Evid. 403. A military judge enjoys "wide discretion" in applying Mil.R.Evid. 403. *United States v. Rust,* 41 MJ 472, 478 (1995).

■ Ordinarily, the existence of a marriage is a question of fact to be decided in accordance with state law. *United States v. Allen,* 27 MJ 234, 239 (CMA 1988). Acts of infidelity do not invalidate a marriage. *Woy v. Woy,* 737 S.W.2d 769, 774 (Mo.App.1987). Where, however, the issue is whether a servicemember has entered into a sham marriage in furtherance of a conspiracy to defraud the Government, the validity of the marriage under local law is not determinative. *Lutwak v. United States,* 344 U.S. 604, 611, 73 S.Ct. 481, 97 L.Ed. 593 (1953).

In *Lutwak,* the Supreme Court set out the test for determining whether a marriage is a sham entered into solely for the purpose of obtaining government benefits. The Court said, "The common understanding of a marriage, which Congress must have had in mind ..., is that the two parties have undertaken to establish a life together and assume certain duties and obligations." *Id.*

In *United States v. Bolden,* 28 MJ 127, 130 (1989), this Court applied the *Lutwak* test and concluded that, "when Congress authorized a basic allowance for quarters for a servicemember with 'dependents,' ... Congress did not intend that the term include a

person who was linked to a servicemember by only a sham marriage."

■ To determine if the evidence of appellant's homosexual relationships was relevant, we must determine if a fact of consequence was made more or less probable by evidence that appellant and his spouse both lived with and had intimate relationships with a "significant other" before the marriage, and that appellant's relationships continued unchanged during the marriage.

The key fact of consequence raised by appellant's testimony was whether appellant and Lori Lussier were "married" solely for the purpose of obtaining government benefits, or whether they intended to "establish a life together and assume certain duties and obligations." In our view, the evidence of appellant's relationships with SPC Runey and Airman Harris made it more probable that appellant and his spouse intended to continue their separate lives and relationships. The relevance of this evidence to the nature of appellant's marriage flows not from the homosexual nature of the relationships, but rather from the fact that those relationships existed before and continued after the marriage. Our analysis of the issue whether appellant's marriage was a sham would be the same if the evidence showed heterosexual relationships.[2]

While the homosexual nature of the relationships does not make the evidence more or less probative on the issue whether appellant's marriage was a sham, the fact that the relationships were homosexual is significant in assessing the prejudicial impact of the evidence. Because the military judge did not articulate the factors he considered in balancing probative value against prejudicial impact, we do not accord him the deference that flows from a properly articulated balancing. *See United States v. Harris,* 46 MJ 221, 225 (1997).

Nevertheless, based on the facts before him, we hold that the military judge did not

2. The Government offered the evidence as probative of motive, but the military judge did not submit it to the members as evidence of motive. Thus, we do not decide whether the evidence was admissible to show that appellant entered into a sham marriage to obtain money for an apartment off base, where he could maintain a relationship with SPC Runey that he could not maintain in the barracks without risking discovery.

abuse his discretion. SPC Runey and Airman Harris described their relationships with appellant and between Lori Lussier and Allison LeGros in generalized, non-inflammatory terms, with no reference to specific acts. The military judge made his ruling after hearing the court members' responses during *voir dire*, where only two of the six members expressed any moral disapproval of homosexuality. The two members who expressed disapproval unequivocally stated that they would follow the military judge's instructions during deliberations. No member expressed any inclination to disbelieve the testimony of a homosexual. The military judge's instructions limited the purpose for which the evidence could be considered. Under the circumstances, we are satisfied that the probative value of the evidence was not outweighed by the danger of unfair prejudice.

### Decision

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is affirmed.

EFFRON, Judge, with whom COX, Senior Judge, joins (dissenting):

As noted by the majority, the record indicates that appellant told a friend he was getting married "to move off base." The Government also introduced evidence that appellant's wife continued to live in the separate apartment she maintained prior to the marriage. The majority also notes that the defense introduced evidence that appellant and his wife spent weekends together, that appellant's wife worked long hours in a day care center, and that she did not want to move from her apartment due to the long drive from the center to appellant's duty station.

In an era of two-career relationships, the timing of marriage and the nature of marital living arrangements may be heavily influenced by such unromantic factors as tax laws, occupational benefits, and professional opportunities. Despite the relatively high volume of cases prosecuted in the military justice system involving the heterosexual activity of married servicemembers, there is little indication that heterosexual activity outside the marital relationship has led to allegations of "sham" marriages. As the majority notes, marital infidelity does not prove that a marriage is a sham.

In the present case, the infidelity relied upon by the prosecution during its case in rebuttal was different. The prosecution sought to discount appellant's testimony through proof of his homosexual conduct.

In the armed forces, homosexuality is different from any other form of sexual activity. There is no requirement to discharge servicemembers who engage in adultery, heterosexual sodomy, fraternization, sexual harassment, or child abuse. A person who engages in homosexual conduct, however, is subject to mandatory discharge, with very limited exceptions. 10 USC § 654(b). Congress, in enacting this mandatory discharge requirement, specifically found that "[t]he presence in the armed forces of persons who demonstrate a propensity or intent to engage in homosexual acts would create an unacceptable risk to the high standards of morale, good order and discipline, and unit cohesion that are the essence of military capability." *Id.* at § 654(a)(15).

The statutory findings underscore the high degree of antipathy to homosexuality in the armed forces. Under these circumstances, it is essential that military judges ensure that evidence of homosexuality not be introduced into a court-martial unless it is clear that the probative value substantially outweighs the danger of unfair prejudice. *See* Mil.R.Evid. 403.

In the present case, appellant sought to exclude evidence of his homosexuality. I agree with the majority that a sexual relationship that both pre-dates and post-dates a marriage, regardless of sexual orientation, is potentially relevant on the question of whether a marriage is a sham. Mere relevance, however, is not enough where there is a danger of unfair prejudice.

The majority takes comfort in the fact that the military judge gave a limiting instruction, that the two witnesses who described the homosexual relationships used non-inflamma-

tory language, and that only two of the six members of the court-martial panel expressed moral disapproval of homosexuality. However, the introduction of an inflammatory topic into a court-martial, even if done in a dispassionate manner, does not demonstrate that the evidence was more probative than prejudicial. Such a determination can be made only following a thorough explication of the pertinent facts and a careful balancing of the applicable factors on the record. As the majority notes, the military judge did not articulate on the record the factors he relied upon. Although in many circumstances it is possible for us to ascertain from the record the basis of the military judge's ruling, this is not such a case. Given the extremely controversial and volatile nature of the evidence introduced by the prosecution, I would not engage in such speculation. I would reverse the decision of the court below and set aside the results of trial. If such evidence is to be used against appellant, it should be introduced only after a military judge has set forth on the record the specific factors balanced under Mil.R.Evid. 403.