**UNITED STATES**

v.

**Staff Sergeant Gregory P. BANKER,
United States Air Force.**

**ACM 34531.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 9 Feb. 2001.

8 Oct. 2002.

Appellate Counsel for Appellant: Captain Patrick J. Dolan (argued), Colonel Beverly B. Knott, Lieutenant Colonel Timothy W. Murphy, Major Maria A. Fried, Major Jefferson B. Brown and Major Jeffrey A. Vires.

Appellate Counsel for the United States: Captain Adam B. Oler (argued), Colonel Anthony P. Dattilo and Lieutenant Colonel Lance B. Sigmon.

Before SCHLEGEL, BURD, and PECINOVSKY, Appellate Military Judges.

## OPINION OF THE COURT

BURD, Senior Judge:

On 7–9 February 2001, the appellant was tried by general court-martial composed of officer and enlisted members at Sheppard Air Force Base (AFB), Texas. Contrary to his pleas, he was found guilty of sodomy with a child under the age of 16 years on divers occasions and sodomy on divers occasions, in violation of Article 125, UCMJ, 10 U.S.C. § 925, indecent acts with a child under the age of 16 years on divers occasions, indecent acts with another on divers occasions, and adultery on divers occasions, in violation of Article 134, UCMJ, 10 U.S.C. § 934. He was found not guilty of carnal knowledge under Article 120, UCMJ, 10 U.S.C. § 920. The court members sentenced the appellant to a bad-conduct discharge, confinement for 2 years, and reduction to E–1. The convening authority approved the adjudged sentence.

The appellant has raised three issues before us.[1] The appellant attacks the legal and factual sufficiency of the evidence on all the offenses and claims the military judge made two separate erroneous evidentiary rulings. We will modify the findings on the specification of indecent acts with a child because the evidence does not show that the offense occurred as alleged. We agree with the appellant that the evidence on the offense of indecent acts with another is not legally sufficient and will set aside the findings on that specification. We otherwise disagree with the appellant's assertions. Finally, we will reassess the sentence. We will begin our discussion with a statement of the relevant facts established by the evidence.

### The Facts

In December 1994, LG began babysitting for the appellant and his wife.[2] LG was 14 years old at that time. Her birth date was 28 April 1980. The appellant had a son (MB), who was then 9 years old, and a daughter, who was younger than the son. The appellant's spouse (CB) worked at a business in the local community with LG's mother. It was through this connection that the Bankers obtained LG's services as a babysitter.

LG babysat for the Bankers once or twice a month until March 1996. At that time, LG became, what she called, "a full-time babysitter," which meant that anytime LG and the Bankers' children weren't in school, she would be at the Bankers' home. She often participated in family activities, e.g., dinners, shopping, attending church activities, watching movies. She would occasionally stay overnight.

Sometime in early 1995, the appellant began to sexually groom LG. While driving her home one evening after babysitting, the appellant parked the car while pretending to be lost, and kissed LG and stuck his tongue into her mouth. Apparently, the appellant interpreted LG's reaction as a green light because he soon advanced to deliberately brushing his hand against her breasts and buttocks as they passed in a hallway or doorway. He also introduced LG to pornography by showing her magazines, pictures on his computer, and videotapes, both professionally made and "homemade." Over time, the appellant progressed to more overt indecent acts, sodomy (both oral and anal), and sexual intercourse. The indecent acts, sodomy, and sexual intercourse occurred on multiple occasions. Often, the appellant would initiate these acts in his home while his wife was at work and his children were playing outside or in another part of the house. He also used a van while driving LG home to carry out his lasciviousness.

The appellant continued his sexual abuse of LG until July 1999, when she stopped babysitting for the Bankers. That summer, LG saw the movie *American Pie*. She was disturbed by the movie's portrayal that some men were preoccupied "with getting females' virginity." LG later asked the appellant whether the portrayal was accurate and the appellant confirmed that, at least for him, it was true. LG was very upset by the appellant's response and she stopped babysitting for the Bankers and engaging in sexual acts with the appellant.

After breaking off relations with the Bankers, LG told a friend about her sexual relationship with the appellant. The friend recommended that LG tell her mother, which she did. LG's mother insisted on telling authorities. Thereafter, the Air Force Office of Special Investigations (AFOSI) opened an investigation into the appellant's activities. When interviewed by an AFOSI agent, LG, after initially minimizing the appellant's conduct, revealed the details of his acts.

### Legal and Factual Sufficiency

The appellant claims that the evidence is both legally and factually insufficient to support the findings of guilty. This broad claim is essentially based on the fact that all of the appellant's sexual misconduct is alleged to have occurred with LG, the appellant's assertion that the testimony of LG is not worthy of belief, and that her accusations are inher-

---

1. We heard oral argument on the issues on 29 May 2002.

2. The appellant's age was not introduced into evidence until the sentencing phase of the court-martial. In December 1994, the appellant was 34 years old.

ently improbable. We disagree. We find the testimony of LG to be credible. Further, when considering all the evidence admitted on findings, we conclude that her testimony was the truth.

The appellant makes additional claims in the event we find LG to be credible. He asserts that the evidence of the appellant's sodomy with a child on divers occasions is insufficient. The appellant claims that the evidence on each of the indecent acts specifications is insufficient. He also asserts that none of the acts encompassed within Specification 2 of Charge III were indecent because LG was at least 16 years old, the acts were consensual, and were not viewed by a third person.[3]

"The test for legal sufficiency requires courts to review the evidence in the light most favorable to the Government. If any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, the evidence is legally sufficient." *United States v. Reed*, 54 M.J. 37, 41 (2000) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) and *United States v. Turner*, 25 M.J. 324 (C.M.A.1987)). The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, the members of the [Court of Criminal Appeals] are themselves convinced of the accused's guilt beyond a reasonable doubt." *Turner*, 25 M.J. at 325, *quoted in Reed*, 54 M.J. at 41.

The appellant's sexual misconduct with LG occurred over four and one-half years, it started when LG was 14 and continued until she was 19. The allegations of sodomy and indecent acts reflect a break in time, 28 April 1996, which is the day LG turned 16.

The prosecution introduced enough evidence and conducted a sufficiently specific direct examination of LG to establish the legal and factual sufficiency of the two specifications of sodomy under Charge II and the adultery under Charge IV. However, we conclude that the trial counsel failed to ask

the questions of LG necessary to establish with sufficient specificity that the indecent acts occurred as specifically charged.

Both Specification 1 and Specification 2 of Charge III allege that the appellant committed indecent acts with LG on divers occasions during the separate time periods alleged by "fondling her breasts and private parts with his hands and digitally penetrating her vagina." LG testified that the appellant, among other things, put his fingers in her vagina in the spring of 1995. The trial counsel failed to ask whether the appellant ever did that on any other occasion, e.g., within the time periods alleged in the first two specifications of Charge III and not outside the statute of limitations. We are satisfied that the evidence is legally and factually sufficient to sustain a modified finding of guilty under Specification 1 of Charge III, which alleges indecent acts with a child, deleting reference to "digitally penetrating her vagina." Regarding Specification 2 of Charge III, the trial counsel failed to ask whether any of the indecent acts, which LG described in her testimony as occurring when she was 15 years old, continued to occur after she turned 16. Although the clear inference of guilt arises from the evidence because of the number of various sexual acts that occurred during the years of the appellant's abuse of LG, we hold the evidence on Specification 2 of Charge III is legally insufficient. *Reed*, 54 M.J. at 41; *Turner*, 25 M.J. at 324.

## Mil. R. Evid. 412 Evidence

■ The appellant claims that the military judge erred by preventing the defense from presenting evidence concerning LG's purported motive to fabricate her allegations against the appellant. We disagree.

The defense moved at trial, pursuant to Mil. R. Evid. 412(b)(1)(C), to offer evidence of LG's past sexual behavior. The defense theory of admissibility of the purported other sexual behavior by LG was that it showed LG's motive to fabricate the allegations she made against the appellant and that exclusion of the evidence would violate the consti-

---

3. While we see reason to disagree with the appellant on the issue of indecency, we need not reach this issue because of our conclusion that the

evidence is legally insufficient to prove the appellant's guilt of Specification 2 of Charge III.

tutional rights of the appellant. Pursuant to Mil. R. Evid. 412(c)(2), the military judge held a closed hearing to receive the evidence. LG elected to be present during the hearing and to testify.

The evidence consisted of the testimony of MB, the appellant's 13–year–old son. MB claimed that LG sexually molested him about 60 times from sometime during the first year of her babysitting until she stopped babysitting in July 1999. MB said he was 9 years old when LG first molested him. MB admitted that the first time he told anyone about the molestations was in March 2000, while he was in a counseling session with Walter Swinhoe, a licensed psychotherapist and counselor. He explained that his parents wanted him to see this counselor [4] because he had engaged in improper sexual behavior, i.e., touched the vaginas and buttocks of two 7–year–old cousins, got on the roof of the house to watch his mother take a shower, and got in the shower with his younger sister. MB also admitted he asked the counselor to report his allegations about LG to the police. After MB testified, the military judge gave LG the opportunity to testify. She took the stand and testified that she had not engaged in any sexual activity with MB.

The defense claimed that the evidence presented by MB's testimony was relevant to attack LG's credibility by showing a motive for her to fabricate the allegations she made about the appellant. The military judge ruled the evidence was not relevant because it did not suggest a motive to fabricate. The fact cited by the military judge as important in this conclusion was that LG made her allegations about the appellant about eight months before MB made his allegations about LG. In addition to finding the evidence irrelevant, the military judge also ruled the evidence "clearly not constitutionally required under these circumstances."

In arguing the motion at trial and the issue on appeal, the appellant has claimed that Mil. R. Evid. 412 does not apply. We will address this question before turning to the question of relevance.

As amended in 1998, Mil. R. Evid. 412(a) provides:

(a) *Evidence generally inadmissible.* The following evidence is not admissible in any proceeding involving **alleged sexual misconduct** except as provided in subdivisions (b) and (c):

(1) Evidence offered to prove that any **alleged victim** engaged in other sexual behavior.

(2) Evidence offered to prove any **alleged victim's** sexual predisposition.

(Emphasis added.)

The 1998 amendment has created a question of what type of alleged sexual misconduct was intended to be covered by the rule. Prior to 1998, the language of Mil. R. Evid. 412 supported the conclusion that the rule only applied in cases wherein nonconsensual sexual offenses were alleged.[5] With the 1998 amendment, use of the term "nonconsensual sexual offense" was replaced with "involving alleged sexual misconduct." However, the title of the rule still contains reference to "nonconsensual sexual offenses" and the term, even though not used in the text of the rule, is defined at the end of the rule. Mil. R. Evid. 412(e). A fair appraisal of the 1998 changes to the rule would seem to require the concession that the intentions behind the changes are clouded in ambiguity.

Our colleagues in the Coast Guard have resolved the question for themselves, stating: "However, as the title of the rule, itself, and subparagraph (e) make plain, the rule properly applies only to nonconsensual sexual misconduct." *United States v. Stirewalt,* 53 M.J. 582, 588 (C.G.Ct.Crim.App.2000). We do not agree with this conclusion. We certainly do not see the applicability of the rule as plainly stated within it.

Mil. R. Evid. 412(e) states:

A "nonconsensual sexual offense" is a sexual offense in which consent by the victim is an affirmative defense or in which the

---

4. The appellant had been in counseling with the same psychotherapist. *See* Appellate Exhibit XI, Stipulation of Expected Testimony of Walter Swinhoe.

5. Until the 1998 amendment, Mil. R. Evid. 412 was superceded by Fed.R.Evid. 412 in 1994 by operation of Mil. R. Evid. 1102. *United States v. Sanchez,* 44 M.J. 174, 177, n. 4 (1996).

lack of consent is an element of the offense. This term includes rape, forcible sodomy, assault with intent to commit rape or forcible sodomy, indecent assault, and attempts to commit such offenses.

Why would the drafters of the 1998 amendment leave the words "nonconsensual sexual offenses" in the title of the rule and continue to define the term without change but otherwise delete reference to the term in the text of the rule? We are not in a position to definitively answer this question. The rationale offered by our Coast Guard colleagues is unconvincing: "The inclusion of a definition of 'nonconsensual sexual offense' is unique to the military version of the 'rape shield' rule. Adultery is a crime under the UCMJ, but it is not otherwise a federal criminal offense. Thus, the need for differentiating nonconsensual sexual offenses is largely confined to the military context." *Stirewalt*, 53 M.J. at 588, n. 6. The unfortunate implication of this viewpoint is that consensual sexual offenses have no victims within the meaning of the rule. We decline to interpret the rule in this manner. Our view is that victims deserve protection regardless of the nature of the alleged sexual misconduct.

The 1998 amendment to Mil. R. Evid. 412 incorporated changes made to Federal Rule of Evidence 412 in 1994. *See Manual for Courts–Martial, United States (MCM)*, A22 (2000 ed.).

> As amended by Congress, [Federal] Rule 412 applies in all civil and criminal cases "involving alleged sexual misconduct." This term is left undefined. Clearly it applies to cases alleging rape and sexual abuse, whether civil or criminal. But the breadth of the term "involving alleged sexual misconduct" seems also to cover such claims as for sexual harassment in employment. As such, the amended Rule is far broader tha[n] the original Rule, which was limited to criminal cases in which a sex crime was charged.

Stephen A. Saltzburg, et al., *Federal Rules of Evidence Manual*, Vol. 2, § 412.02[1] (8th ed.2002) (citations omitted).

We believe the impact of the 1998 amendment changed the focus of the question of the substantive applicability of the rule from the nature of the alleged sexual misconduct to the status of the person against whom the Mil. R. Evid. 412 evidence is offered.[6] The question is whether the person is a victim of alleged sexual misconduct, not whether the alleged sexual misconduct is nonconsensual. As stated in the Analysis of the Military Rules of Evidence on the 1998 amendment to Mil. R. Evid. 412, "Rule 412 does not, however, apply unless the person against who the evidence is offered can reasonably be characterized as a 'victim of alleged sexual misconduct.' " *MCM*, A22–36. This makes applicability of the rule consistent with the purpose of the rule, i.e., to protect alleged victims of sexual misconduct from unwarranted invasions of privacy and character assassinations. *See Id. See also Michigan v. Lucas*, 500 U.S. 145, 150, 111 S.Ct. 1743, 114 L.Ed.2d 205 (1991) ("rape victims deserve heightened protection against surprise, harassment, and unnecessary invasions of privacy").

In the appellant's case, as we described earlier, the appellant's offenses constituted a course of conduct that occurred over a period of time that extended to when LG was under 16 years of age and, therefore, a child, and continued past her sixteenth birthday. We have previously held that Mil. R. Evid. 412 protections apply to cases involving alleged child victims of sexual abuse. *United States v. Johnson*, 17 M.J. 517 (A.F.C.M.R.1983) (rejecting appellant's argument that 412 was not applicable to carnal knowledge because it was not a "nonconsensual sexual offense"). Under the circumstances of this case, we see no serious question whether LG was a victim of the alleged sexual misconduct—given her status as a child when the appellant began his pattern of criminal sexual abuse of LG, she clearly was a victim. Therefore, we hold Mil. R. Evid. 412 is applicable to the resolution of the issue raised by the appellant.

We review a military judge's decision on admission of evidence for a clear abuse of discretion. *United States v. Johnson*, 46

---

**6.** An equally interesting procedural issue is in what forums does Mil. R. Evid. 412 apply, i.e., what was intended by the 1998 amendment changing the language of the rule from "in a case" to "in any proceeding"? This issue is not now before us.

M.J. 8, 10 (1997). The judge's decision must be "arbitrary," "clearly unreasonable," or "clearly erroneous" to be reversed on appeal. *United States v. Travers,* 25 M.J. 61, 62 (C.M.A.1987).

◾ Mil. R. Evid. 412 has been described by our superior court as primarily a rule of relevance. *United States v. Saipaia,* 24 M.J. 172, 175 (C.M.A.1987), *cited in United States v. Williams,* 37 M.J. 352, 359 (C.M.A.1993). *See United States v. Jensen,* 25 M.J. 284, 286 (C.M.A.1987) ("Relevance is the key to determining when the evidence is 'constitutionally required to be admitted.' "), *cited in United States v. Carter,* 47 M.J. 395, 396 (1998). *See also United States v. Buenaventura,* 45 M.J. 72, 79–80 (1996) and cases cited therein; *United States v. Sanchez,* 44 M.J. 174 (1996) and cases cited therein.

> To overcome the prohibition of Mil. R. Evid. 412, the defense must establish a foundation demonstrating constitutionally required relevance, such as "testimony proving the existence of a sexual relationship that would have provided significant evidence on an issue of major importance to the case...." "[D]efense counsel has the burden of demonstrating why the general prohibition in Mil. R. Evid. 412 should be lifted to admit evidence of the sexual behavior of the victim...."

*Carter,* 47 M.J. at 396 (citations omitted).

The military judge conducted the necessary hearing to permit the defense to satisfy their burden to show the admissibility of the proffered evidence. We agree with the military judge that the evidence was irrelevant. Mil. R. Evid. 401, 402. And, as the military judge implied, even if there may have been relevance to the evidence, that relevance was so tenuous as to not require its admission. The appellant claims the testimony of his son shows that LG had a motive to fabricate the allegations she made about the appellant. The circumstances do not support this claim. To the contrary, the motive to fabricate was with the appellant's son. His claims about LG molesting him came nearly 8 months after LG told authorities about the appellant's crimes. And the son's claims about LG were communicated to the appellant's counselor and were made with a request that the counselor report the claims to the police. The son's claims were a desperate attempt to save his father by attacking the character of LG. Even were we to give any credence to the son's allegations, we fail to see how the behavior provides a motive for LG to fabricate. If the allegations are true, the behavior is likely a bi-product of the appellant's sexual abuse of LG, not evidence that she is a liar. In short, the appellant has not met his burden of showing why the prohibition in Mil. R. Evid. 412 should have been lifted to admit his son's testimony about LG. *Carter.* We hold that the military judge did not abuse his discretion in refusing to admit the evidence. *Johnson.*

### Appellant's Statements to Psychotherapist

◾ The appellant was in counseling with Walter Swinhoe, a psychotherapist, from 1 November 1995 to 19 August 1997. The prosecution sought to introduce as a business record the psychotherapist's notes of admissions made by the appellant during counseling sessions with him. The defense objected, claiming the notes were irrelevant and protected by the psychotherapist-patient privilege of Mil. R. Evid. 513. The military judge refused to allow the notes in evidence and informed the trial counsel that, unless the parties agreed to a substitute, they would need to call Walter Swinhoe as a witness if they wanted to introduce the substance of the admissions reflected in the notes. It is apparent from the military judge's remarks that he concluded that the appellant's admissions were relevant and the rules of evidence, particularly Mil. R. Evid. 403 and 513, did not require exclusion of Walter Swinhoe's testimony. The parties later agreed to a stipulation of Walter Swinhoe's expected testimony. The stipulation provided the following:

> 1. I am Walter Swinhoe. I am a licensed psychotherapist and counselor. The [a]ccused was in counseling under my care from 1 November 1995 to 19 August 1997. During the sessions I would take notes concerning our discussions immediately after each session ended. When I prepared these notes the events I recorded were fresh in my mind. When I prepared the

notes, they were accurate. I cannot now completely and accurately recall all of the facts in my notes from this time period.

2. My notes for 1 November 1995 state that "Greg's affect and mood even—he debriefed increased anger toward man that had affair with wife." My notes for 24 November 1995 state that "Increased discussed voiced with increased 'urges' when not sexual with wife."

3. My notes for 19 November 1996 state that Greg stated "I give up myself out of fear she'll leave."

4. My notes for 17 December 1996 state that "He voiced having 22 disc of pornographic material."

5. My notes for 25 March 1997 state that "He voiced how difficult it was for him not to be sexual 'at this time of year.' 'I think about it 24 hours a day.'"

6. My notes for 1 April 1997 state that "Greg voiced that he was told by God to get rid of sexual devices, tapes, disc and photograph. 'I erased 13 disc, 5 tapes, threw away devices and burnt pictures.' He voiced a sense of loss and relief from behavior. He went out and report that he got off America On–Line and threw away Playboys."

The appellant concedes that the Mil. R. Evid. 513 psychotherapist-patient privilege is not applicable to his court-martial because the communications in question were not made after 1 November 1999. *United States v. Rodriguez,* 54 M.J. 156, 160 (2000). *See also United States v. Paaluhi,* 54 M.J. 181 (2000). The appellant claims the military judge should have excluded the communications contained in the stipulation of Walter Swinhoe's expected testimony because they were irrelevant or so unfairly prejudicial as to require exclusion under Mil. R. Evid. 403. We disagree.

As stated previously, we review a military judge's decision on admission of evidence for a clear abuse of discretion. *Johnson,* 46 M.J. at 10. The judge's decision must be "arbitrary," "clearly unreasonable," or "clearly erroneous" to be reversed on appeal. *Travers,* 25 M.J. at 62 (C.M.A.1987). A military judge has wide discretion under Mil. R. Evid. 403. *United States v. Tyndale,* 56 M.J. 209, 215

(2001) (citing *United States v. Phillips,* 52 M.J. 268, 272 (2000)). Where the military judge weighs the evidence under Mil. R. Evid. 403 and states the reasons for admitting the evidence, the judge will be reversed only for a clear abuse of discretion. *Id.* (citing *United States v. Browning,* 54 M.J. 1, 7 (2000)).

In the appellant's case, the military judge did not state that he conducted a Mil. R. Evid. 403 analysis and did not specifically state his reasons for concluding that the information in the stipulation of expected testimony was admissible. The military judge likely gave no thought to such an analysis because the parties agreed to the stipulation. While the military judge did not ask what the defense position was regarding the earlier objections, the defense counsel also did not say anything about preserving the issues.

We need not decide whether the appellant waived his previous objections to the evidence by entering into a stipulation of expected testimony covering that evidence because we hold the evidence relevant and not unfairly prejudicial to the appellant. However, to avoid the application of waiver, the better practice is for defense counsel to state on the record the intention of the defense regarding previous objections to evidence subsequently stipulated to. *Cf. United States v. Bridges,* 52 M.J. 795, 801 (A.F.Ct. Crim.App.2000) (when defense freely stipulates to what a witness would testify, defense waives confrontation on matters contained in stipulation absent a specific objection to the contrary at trial).

The relevance of the appellant's admissions to his psychotherapist, as evidenced in the stipulation of expected testimony, is that they show a motive for the appellant's acts with LG and they corroborate the testimony of LG regarding those subjects. The appellant admitted to harboring anger over his wife's adultery and to having increased urges when not sexual with his wife—easily understood factors that might motivate the appellant to act on his anger and urges by cultivating a sexual relationship with his teenage babysitter. The appellant admitted to possessing various forms of pornography and sexual de-

706

vices—consistent with LG's testimony about the appellant's introduction of LG to those perversities. While admittedly prejudicial, we hold the probative value of such evidence to not be substantially outweighed by the danger of unfair prejudice. Mil. R. Evid. 403.

## Sentence Reassessment

In light of our decision to modify Specification 1 of Charge III and to set aside the conviction under Specification 2 of Charge III, and to dismiss this specification, we have decided to reassess the sentence rather than return the case for a rehearing. *United States v. Eversole*, 53 M.J. 132 (2000). We "may purge the prejudicial impact of an error at trial if [we] can determine that 'the accused's sentence would have been at least of a certain magnitude.'" *United States v. Harris*, 53 M.J. 86, 88 (2000) (quoting *United States v. Jones*, 39 M.J. 315, 317 (C.M.A. 1994) and *United States v. Sales*, 22 M.J. 305, 307 (C.M.A.1986)). "No sentence higher than that which would have been adjudged absent error will be allowed to stand." *Harris*, 53 M.J. at 88 (quoting *Jones*, 39 M.J. at 317 (citing *United States v. Peoples*, 29 M.J. 426, 428 (C.M.A.1990))).

We are confident that, even with the modifications in the findings, the appellant would have received the same sentence as that which was adjudged. The evidence the members would have received would not have changed. Absent the one specification, the maximum confinement would have been 33 years rather than 38 years as the court members were instructed. This difference would not have changed the sentence imposed and approved. In making our deci-

sion, particularly because the appellant's lengthy service, we have carefully considered the pronouncements of our superior court in *Eversole*. We do not view this case as presenting the "unique type of dilemma [that] ought to be resolved by a trial court if an accused's fundamental right to trial is to be vindicated." *Eversole*, 53 M.J. at 134.

The appellant had 21 years, 4 months active service at the time of his court-martial. But, given the appellant's age, status as a noncommissioned officer, and the serious nature of his repeated criminal acts, we find no miscarriage of justice in affirming his approved sentence. *Eversole*, 53 M.J. at 133.

## Conclusion

The finding of guilty of Specification 1 of Charge III is modified as follows: Of Specification 1 of Charge III, guilty, except the words "and digitally penetrating her vagina." Of the excepted words, not guilty. The finding of guilty of Specification 2 of Charge III is set aside and Specification 2 of Charge III is dismissed.

The approved findings, as modified, and sentence, as reassessed, are correct in law and fact. Article 66(c), UCMJ, 10 U.S.C § 866(c); *Reed*, 54 M.J. at 41 and cases cited therein. Accordingly, the approved findings, as modified, and the sentence are

AFFIRMED.