# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**Misc. Dkt. No. 2022-01**

————————————

**In re Gregory P. BANKER**
*Petitioner*

————————————

Petition for Extraordinary Relief in the Nature of a Writ of Coram
Nobis

Decided 8 November 2023

————————————

*Military Judge*: Gregory E. Pavlik; Shad R. Kidd (post-trial hearing).

*Approved sentence*: Bad-conduct discharge, confinement for 2 years, and
reduction to E-1. Sentence adjudged 9 February 2001 by GCM convened
at Sheppard Air Force Base, Texas.

*For Petitioner*: Major Megan R. Crouch, USAF; Major Kasey W. Hawkins, USAF; Major Sara J. Hickmon, USAF.

*For Respondent*: Colonel Naomi P. Dennis, USAF; Major John P. Patera,
USAF; Major Brittany M. Speirs, USAF; Captain Jocelyn Q. Wright,
USAF; Mary Ellen Payne, Esquire.

Before RICHARDSON, CADOTTE, and ANNEXSTAD, *Appellate Military Judges*.

Senior Judge RICHARDSON delivered the opinion of the court, in which
Senior Judge CADOTTE and Senior Judge ANNEXSTAD joined.

————————————

**This is an unpublished opinion and, as such, does not serve as
precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

RICHARDSON, Senior Judge:

On 26 January 2022, Petitioner, through counsel, filed with this court a
Petition for Extraordinary Relief in the Nature of a Writ of Error Coram Nobis.

Petitioner requested this court issue "a writ of error *coram nobis* setting aside his 9 February 2001 conviction, as it was based upon false testimony."

On 6 February 2023, we returned the record for a hearing in accordance with *United States v. DuBay*, 37 C.M.R. 411 (C.M.A. 1967) (per curiam). *In re Banker*, Misc. Dkt. No. 2022-01, 2023 CCA LEXIS 61, at \*8 (A.F. Ct. Crim. App. 6 Feb. 2023) (unpub. op.). We asked that the detailed military judge conducting the hearing make findings of fact on *Denedo*[1] factors (3) and (4), specifically addressing:

> (1) The circumstances surrounding LG's recantation(s) of her testimony from Petitioner's court-martial, including when Petitioner learned that LG was recanting. (*Denedo* factor (3)).

> (2) The circumstances leading to Petitioner filing his Petition for Extraordinary Relief in the Nature of a Writ of Error Coram Nobis in January 2022, nearly 21 years after his conviction. (*Denedo* factor (3)).

> (3) The circumstances relating to LG's 28 October 2021 affidavit statement[2] that LG would have admitted her allegations were untrue to any investigator or participant to the court-martial, had she been asked directly, before Petitioner was convicted. (*Denedo* factor (4)).

*Id.* at \*8–9. Understanding that in consideration of the *Denedo* factors, evidence relating to LG's veracity and Petitioner's underlying request may be revealed, we specifically did not request findings of fact on the merits of Petitioner's request for a new trial.

Because we find Petitioner has not met all six threshold requirements for the court to grant a writ of *coram nobis*, we do not evaluate whether a new trial would be warranted. We find a writ should not issue.

## I. BACKGROUND

### A. Pre-*DuBay* hearing

On 9 February 2001, Petitioner was convicted at a general court-martial composed of officer and enlisted members at Sheppard Air Force Base, Texas. Contrary to his pleas, Petitioner was found guilty of sodomy with a child under

---

[1] *Denedo v. United States*, 66 M.J. 114, 126 (C.A.A.F. 2008), *aff'd*, 556 U.S. 904 (2009).

[2] Specifically, LG states, "During the trial, on cross-examination, I admitted that I had provided inconsistent and false statements to investigators, but I never directly was asked or made [Petitioner's] defense counsel aware that my allegations were false."

the age of 16 years on divers occasions and sodomy on divers occasions, in violation of Article 125, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 925; and indecent acts with a child under the age of 16 years on divers occasions, indecent acts with another on divers occasions, and adultery on divers occasions, in violation of Article 134, UCMJ, 10 U.S.C. § 934.[3,4] The offenses involved LG, who testified as the primary government witness. The court members sentenced Petitioner to a bad-conduct discharge, confinement for two years, and reduction to the grade of E-1. The convening authority approved the adjudged sentence. On 8 October 2002, this court modified the specification of indecent acts with a child and set aside the finding of guilty to the specification of indecent acts with another. *United States v. Banker*, 57 M.J. 699, 706 (A.F. Ct. Crim. App. 2002). Additional history of Petitioner's case is detailed in our 6 February 2023 opinion. *See In re Banker*, unpub. op. at *2–5.

In his petition, Petitioner argued we should issue the writ because (1) we have jurisdiction, (2) issuance is "necessary and appropriate," and (3) "there are sufficient grounds to grant a new trial due to fraud on the court."[5] Additionally, Petitioner asserted that "[i]n this case, where LG's testimony was the only evidence of Petitioner's guilt, and no physical evidence corroborated her testimony, there is sufficient basis for this [c]ourt to grant the writ." Respondent opposed issuance of the writ. In response to the petition, Respondent conceded that this court has jurisdiction to consider the petition; however, it did not agree that issuance is necessary and appropriate, or that there are sufficient grounds to grant a new trial due to fraud upon the court.

## B. Post-*DuBay* hearing

The *DuBay* hearing was conducted on 30 and 31 May 2023. We received the military judge's findings of fact on 5 June 2023 and the record of trial—to include the *DuBay* hearing transcript—on 10 July 2023.

On 15 June 2023, Respondent filed a motion to attach documents. The documents consisted of (1) a declaration from a trial counsel at Petitioner's 2001 court-martial (Mr. TJ), along with an email LG sent to Mr. TJ after the *DuBay* hearing on 6 June 2023, and (2) a declaration from the senior trial counsel (STC) at the *DuBay* hearing, along with an email LG sent to the STC after the

---

[3] References to the punitive articles of the UCMJ are to the *Manual for Courts-Martial, United States* (1995 ed.).

[4] Petitioner was found not guilty of carnal knowledge under Article 120, UCMJ, 10 U.S.C. § 920.

[5] Petitioner does not claim "newly discovered evidence" as grounds for a new trial. Rule for Courts-Martial 1210(f)(2).

*DuBay* hearing on 5 June 2023. Respondent asserted the emails from LG "directly contradict portions of her affidavit filed with this [c]ourt and her testimony during the *DuBay* hearing, and they assist this [c]ourt in determining LG's credibility." In the email to Mr. TJ, LG references her testimony at the *DuBay* hearing regarding a gift she presented to Mr. TJ after Petitioner's court-martial, a photo of which was presented at the *DuBay* hearing. She states, *inter alia,*

> This random clock that meant more to a near stranger in 20
> years than I have ever have to him. How am I so stupid, again.
> I really thought if I saved him it would finally save me. But that
> was never gonna be the case, and he knew it.

In the email, LG also apologized to Mr. TJ for involving him in this case. She states, "I'm so very sorry, that because of me, you now may believe that your life's passion for truth and justice for others, may be a little less. Because of my willingness to lie for him." LG's email to the STC primarily consisted of a comment on part of his closing argument and an apology.

Petitioner opposed the motion to attach. Petitioner argued "[i]t is unclear from the emails and declarations how they provide context to or demonstrate potential influence on LG's testimony at the hearing." Additionally, quoting *United States v. Jessie*, 79 M.J. 137, 444 (C.A.A.F. 2020), he argued they "are not 'necessary for resolving issues raised by materials in the record' because there is no discernable contradiction or revelation of improper influence." The court granted Respondent's motion on 26 July 2023.

On 22 June 2023, Petitioner filed a motion to strike portions of the military judge's findings of fact. He asserted that the military judge exceeded the scope of our order when he made conclusions of law. Respondent opposed the motion, arguing that this court "is not bound by those conclusions of law." We denied Petitioner's motion on 29 June 2023.

Petitioner identified three assignments of error post-*DuBay* hearing: (1) the *DuBay*-hearing military judge exceeded the scope of this court's order by making conclusions of law; (2) valid reasons exist for Petitioner not seeking relief earlier (*Denedo* factor 3); and (3) the new information presented in the petition could not have been discovered through the exercise of reasonable diligence prior to the original judgment (*Denedo* factor 4).

Respondent challenged Petitioner's post-*DuBay* assignments of error. Respondent asserted: (1) the military judge did not exceed the scope, and even if he did, this court reviews conclusions of law *de novo*; (2) Petitioner attempted to hire but did not fully pay attorneys to assist him, had a "laissez-faire attitude" toward pursuing relief, and should have known how to find more effective

avenues for relief; and (3) because LG did not lie at Petitioner's court-martial, no evidence existed to discover.

## II. LAW

The All Writs Act, 28 U.S.C. § 1651(a), grants this court authority to issue extraordinary writs. *Loving v. United States*, 62 M.J. 235, 246 (C.A.A.F. 2005) (citing *Clinton v. Goldsmith*, 526 U.S. 529, 534 (1999)). "The writ of *coram nobis* is an ancient common-law remedy designed 'to correct errors of fact.'" *United States v. Denedo*, 556 U.S. 904, 910 (2009) (quoting *United States v. Morgan*, 346 U.S. 502, 507 (1954)). Appellate military courts have jurisdiction over "*coram nobis* petitions to consider allegations that an earlier judgment of conviction was flawed in a fundamental respect." *Id.* at 917. The writ of *coram nobis* is an extraordinary writ and an extraordinary remedy. *Id.* It should not be granted in the ordinary case; rather, it should be granted only under circumstances compelling such action to achieve justice. *Id.*; *Morgan*, 346 U.S. at 511; *Correa-Negron v. United States*, 473 F.2d 684, 685 (5th Cir. 1973).

Although a Petitioner may file a petition for a writ of *coram nobis* at any time, to be entitled to issuance of the writ, he must meet the following threshold requirements:

> (1) the alleged error is of the most fundamental character; (2) no remedy other than *coram nobis* is available to rectify the consequences of the error; (3) valid reasons exist for not seeking relief earlier; (4) the new information presented in the petition could not have been discovered through the exercise of reasonable diligence prior to the original judgment; (5) the writ does not seek to reevaluate previously considered evidence or legal issues; and (6) the sentence has been served, but the consequences of the erroneous conviction persist.

*Denedo v. United States*, 66 M.J. 114, 126 (C.A.A.F. 2008) (citations omitted), *aff'd*, 556 U.S. 904 (2009).

"This court uses a two-tier approach to evaluate claims raised via a writ of *coram nobis*. First, petitioner must meet the aforementioned threshold requirements for a writ of *coram nobis*. If petitioner meets the threshold requirements his claims are then evaluated under the standards applicable to his issues." *Chapman v. United States*, 75 M.J. 598, 601 (A.F. Ct. Crim. App. 2016) (citing *Denedo*, 66 M.J. at 126). "Recantations of trial testimony are viewed by federal courts with extreme suspicion." *United States v. Rios*, 48 M.J. 261, 268 (C.A.A.F. 1998) (internal quotation marks and citations omitted). Military courts have held that a request for a new trial should not be granted unless "the court is reasonably well satisfied that the testimony given by a material

witness is false." *See, e.g., See United States v. Cuento*, 60 M.J. 106, 112 (C.A.A.F. 2004) (quoting *Rios*, 48 M.J. at 268) (additional citation omitted).

Regarding the third *Denedo* requirement, a petitioner who has the information needed to raise his claim must explain a delay in not seeking relief earlier. *See Bergdahl v. United States*, No. 21-418, 2023 U.S. Dist. LEXIS 127510, at *78, *83–84 (D.D.C. 25 Jul. 2023). In a "clear case of actual innocence, [ ] a delayed coram nobis petition should not ordinarily bar relief." *United States v. Lesane*, 40 F.4th 191, 201 (4th Cir. 2022) (finding valid reasons for delay where petitioner's innocence of the underlying crime based on a change in the law was not disputed).

## III. ANALYSIS

We find that Petitioner has failed to satisfy at least one *coram nobis* threshold requirement, and that "the failure to meet any one alone warrants a denial of Petitioner's writ." *Chapman,* 75 M.J. at 601. Therefore, we do not reach the issues of whether LG's recantations are credible or whether a new trial is warranted.[6] We address the issues specified for the *DuBay* hearing, relating to *Denedo* factors (3) and (4), and conclude valid reasons do not exist for Appellant not seeking relief from this court until 2022.

### A. Affidavits Accompanying Petition

In his petition, Petitioner failed to show valid reasons for not seeking relief earlier. In the affidavits accompanying his petition, Petitioner is silent about when and how he came to learn about LG's recantation. In her affidavit dated 28 October 2021, LG stated "[her] role in [Petitioner's] wrongful conviction has weighed on [her] for decades, but [she] did not know what to do or how to fix it." LG continued, stating:

> In May of 2017, I was travelling on business in the area in which [Petitioner] currently lived. I was able to locate a phone number and contacted him via text. He agreed to meet with me, and we had a discussion, about events that occurred. I had not had any contact with [Petitioner] from the time of his court-martial.

---

[6] While we are not convinced LG was untruthful at Petitioner's trial, we allow that a claim of perjured testimony may constitute an *alleged* error of the most fundamental character.

**B. *DuBay* Hearing Findings of Fact[7]**

**1. Due Diligence**

Respondent asserts that because LG told the truth in her testimony at Petitioner's trial, no lie existed to be discovered through due diligence. We need not determine LG's credibility to resolve this issue. Instead, based on our *de novo* review, we find *Denedo* factor (4) was met. We concur with the military judge's findings on this factor:

> LG's willingness to state that her allegations against [Petitioner] were untrue . . . could not have been discovered through the exercise of reasonable diligence prior to the original judgment because, after she overcame her initial reluctance to participate in the investigation and prosecution, LG was not willing to state [that her allegations were untrue] until well after [Petitioner] was convicted. After her initial claims to [Air Force Office of Special Investigations] agents that nothing happened, she would not have stated her allegations were untrue to any investigator or participant to the court-martial before [Petitioner] was convicted regardless of how directly she was asked.

**2. Delay**

LG sought out Petitioner around May 2017. "She had maintained some awareness of his whereabouts in the years since the trial." She messaged Petitioner, and they arranged to meet in person—according to LG, so she could get "closure." The military judge noted that despite the fact that LG

> was a person who sexually abused [Petitioner's] son and wrongfully accused [Petitioner] of sexually abusing her, leading to wrongful convictions, divorce, severing of most family and social ties, two years in prison, loss of military retirement pay and benefits, and all the negative repercussions stemming from having to register as a sex offender, . . . [Petitioner] asserted he agreed to go out of his way to meet LG.

At the meeting, Petitioner and LG "discussed the investigation, trial, and their lives since the trial for several hours" and "LG deepened or rekindled a connection with [Petitioner] during this conversation." After the meeting, LG felt better about her participation in Petitioner's court-martial.

"LG and [Petitioner] became close over the next few years." The military judge related specifics about their relationship, including how, where, and how

---

[7] Unless otherwise noted, we quote the military judge's findings of fact throughout this section.

often they communicated; hiding or sharing their relationship with their families; and supporting each other through health issues. The military judge concluded that, "[a]t the time of the hearing, LG was emotionally attached to [Petitioner] and considered him to be her closest friend. This attachment seemed particularly important to LG because she asserted she did not have other friends and evinced negative feelings toward at least some of her family members."

"[S]ometime between May and November 2017, LG told [Petitioner] she had lied and that she wanted to fix it and make things right." Both Petitioner and LG took steps to that end. Petitioner consulted legal counsel, who advised him that an affidavit from LG would be helpful. "Thus, [Petitioner] knew relief was possible and the basic elements required for seeking relief by late 2017." Petitioner relayed this to LG, who on 6 November 2017 provided an affidavit to Petitioner, who in turn provided it to his legal counsel. Petitioner could not afford the services of this legal counsel, so he found another legal counsel in February 2018. Petitioner's case appears to have languished with this second legal counsel and Petitioner "eventually ended his professional relationship with [the second counsel] in March 2021, after [three] years with no demonstrable progress toward seeking relief."

Meanwhile, "LG took steps to assist [Petitioner] in seeking relief. She contacted at least two of the attorneys, one defense counsel and one prosecutor [Mr. TJ], who worked on the court-martial. She also contacted JAJA [Air Force Appellate Defense Division]."

> Through her efforts, [Petitioner] learned he could work with JAJA to seek relief, and he pursued that option beginning in late 2020 or early 2021. LG swore to multiple affidavits in 2021, and [Petitioner] swore to an affidavit in late 2021. LG's most recent affidavit and [Petitioner's] affidavit were used in the petition [Petitioner] filed with the [Air Force Court of Criminal Appeals] in January 2022.

The military judge concluded by noting Petitioner's previous experience with JAJA and the appellate courts: "[D]espite his own experience with attorneys from the original trial and a lengthy appellate process, reaching out to any of his former attorneys apparently never occurred to him, even though it did occur to LG."

We find Petitioner's reliance on his first two legal counsel is not a valid reason for delay in this case.[8] We conclude, as the military judge did, that Petitioner "knew of LG's willingness to recant as early as mid-2017, had been advised that he should prepare a statement of facts, and had been told there was a way to seek relief by late 2017." Thereafter, Petitioner failed to fully pay or to follow-up with counsel in a timely manner. Additionally, LG not only co-operated with Petitioner post-recantation, she contacted several attorneys on his behalf and signed three affidavits. Petitioner's own ignorance of the need to pursue post-recantation *coram nobis* relief with a sense of urgency does not itself justify his delay. Petitioner has failed to show a valid reason existed for his delay in filing this petition with our court post-recantation.

## IV. CONCLUSION

The Petition for Extraordinary Relief in the Nature of a Writ of Error Coram Nobis dated 26 January 2022 is hereby **DENIED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court

---

[8] Even if Petitioner's Air Force appellate defense counsel for this writ acted with haste, Petitioner cannot justify the delay between learning of LG's recantation and receiving her first affidavit in November 2017 and contacting JAJA around three years later.